UNITED STATES of America Appellee,

v.

**Danny Leon STANDEFER, Appellant.**

UNITED STATES of America Appellee,

v.

**Anthony Eugene GLASCO, Appellant.**

UNITED STATES of America Appellee,

v.

**Michael Gene EDWARDS, Appellant.**

UNITED STATES of America Appellee,

v.

**Ralph Eugene IVY; Kenneth Ray Kirk, Appellants.**

Nos. 90–2625 to 90–2628.

United States Court of Appeals, Eighth Circuit.

Submitted June 13, 1991.

Decided Oct. 22, 1991.

Donald Ed Payne, Hugo, Okl., and Keith I. Billingsley, Little Rock, Ark., argued (Hack Welch, Hugo, Okl., Paul Johnson, and Gregory E. Bryant, Little Rock, Ark., on briefs), for appellants.

Robert J. Govar, Little Rock, Ark., argued, for appellee.

Before JOHN R. GIBSON, Circuit Judge, ROSS, Senior Circuit Judge, and LOKEN, Circuit Judge.

LOKEN, Circuit Judge.

These consolidated appeals raise a variety of Double Jeopardy Clause issues. In April 1990, a federal grand jury in the Eastern District of Arkansas indicted appellants and others on charges of conspiring to manufacture, distribute and possess with intent to distribute methamphetamine, in violation of 21 U.S.C. § 846. Appellants Kenneth Ray Kirk and Ralph Eugene Ivy moved to dismiss the indictment on the ground that the Double Jeopardy Clause as construed in *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), bars this prosecution because they were charged with and plea-bargained the same criminal conduct in an Idaho federal court in 1989. Appellants Danny Leon Standefer, Anthony Eugene Glasco, and Michael Gene Edwards moved to dismiss the indictment on the ground that the Double Jeopardy Clause as construed in *Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982), bars this prosecution because they were tried three times for the same conduct in an Oklahoma federal court in 1987, and two of those trials ended in mistrials provoked by prosecutorial misconduct. Following an evidentiary hearing,

the district court[1] denied both motions. Appellants elected to treat this as a final collateral order and appealed prior to trial, as permitted by *Abney v. United States,* 431 U.S. 651, 662, 97 S.Ct. 2034, 2041, 52 L.Ed.2d 651 (1977). We affirm.

## I.

Kirk and Ivy base their double jeopardy claim on an August 1989 indictment in the District of Idaho. Count One alleged that they conspired with Victor Rapozo and Fernando Rapozo "in the District of Idaho and in other districts" to "manufacture, distribute, or possess with intent to distribute" methamphetamine from August 1985 to August 1989. Count Two charged them with making the drug at an Idaho facility in November and December of 1985. In January 1990, they entered into a Plea Bargain Agreement pursuant to which they pleaded guilty to Count Two, the substantive charge, and the government dismissed Count One, the conspiracy charge.

In April 1990, Kirk and Ivy were named in this one-count Arkansas indictment, which alleges that fifteen defendants conspired "in the Eastern District of Arkansas and elsewhere" to "manufacture, to distribute and to possess with intent to distribute methamphetamine" from January 1985 to January 1989. One of the forty overt acts alleges that, "On or about December 1, 1985, Rick Edwards and Mike Hasten delivered these chemicals to Ken Kirk and others in Boise, Idaho." That is the only reference to Idaho activities in the Arkansas indictment.

Kirk and Ivy moved to dismiss, arguing that the indictment "alleges the same conduct to which the defendants have previously pled guilty in the District of Idaho." In its response, the government stated:

The United States does not intend to prove the offense for which [Kirk] and Ivy entered pleas of guilty in the District Court of Idaho. In fact, only one fact related to the Idaho case will be presented during the course of the anticipated trial.... the delivery of chemicals by Ricky Joe Edwards to defendants [Kirk and Ivy] in Nampa, Idaho pursuant to the explicit instructions of Anthony Eugene Glasco. Other than that isolated fact.... the evidence in the Arkansas case against these defendants will relate to their participation in a clandestine methamphetamine lab near Daisy, Oklahoma during the first six months of 1985 [and] the subsequent distribution of methamphetamine which was ... a product of that laboratory.

Kirk and Ivy then filed an amended motion to dismiss raising an additional ground, namely, that dismissal of the Idaho conspiracy count pursuant to the Plea Bargain Agreement bars this Arkansas conspiracy prosecution.

The district court recognized that it was presented with two distinct issues: first, whether proof of the alleged Arkansas conspiracy will require proof of the conduct to which Kirk and Ivy pleaded guilty in Idaho; and second, whether the alleged Arkansas conspiracy is the same as the conspiracy alleged in the count dismissed pursuant to the Idaho plea bargain. The district court treated the first as a double jeopardy issue and held that the Double Jeopardy Clause does not bar this prosecution because "overt act number eleven alleged in the present indictment is not the same 'conduct' to which the defendants pleaded guilty in Idaho."

At the motion hearing, in response to questions by the court, all counsel agreed that the second issue involves, not the Double Jeopardy Clause, but rather the question whether the Arkansas conspiracy indictment is a breach of the government's promise in the Idaho plea agreement to dismiss the conspiracy count in the Idaho indictment. Counsel and the court also agreed that this question should be answered by borrowing the totality of the circumstances test prescribed by this court in *United States v. Thomas,* 759 F.2d 659, 662 (8th Cir.1985), for determining when

---

1. Stephen M. Reasoner, United States District Court Judge for the Eastern District of Arkansas.

two conspiracies are the same for double jeopardy purposes. Having thus defined the issue, the district court concluded that the two indictments charged different conspiracies under *Thomas.*

With both issues resolved in the government's favor, the district court denied the motion to dismiss, and this appeal followed.

## A.

■ Appellants' assertion that the Arkansas conspiracy indictment is barred by their plea of guilty to Count Two of the Idaho indictment, the substantive offense of manufacturing amphetamine, requires little discussion. *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), and *Grady v. Corbin* provide the standards under which we analyze claims that a successive prosecution violates the Double Jeopardy Clause. *See McIntyre v. Trickey,* 938 F.2d 899 (8th Cir.1991). Here, the two crimes involve totally different conduct and different statutory violations. The government obviously does not need to prove the conduct to which appellants pleaded guilty in Idaho in order to establish an essential element of the alleged Arkansas conspiracy; indeed, the government has represented that it does not intend to offer evidence of the Idaho crime of manufacturing amphetamine at the Arkansas conspiracy trial. Therefore, we agree with the district court that, under the *Blockburger* and *Grady* tests, the Arkansas conspiracy indictment is not barred by the prior Idaho guilty plea.

## B.

■ On appeal, Kirk and Ivy argue for the first time that the dismissed Idaho conspiracy count bars this Arkansas conspiracy prosecution under the Double Jeopardy Clause as construed in *Grady v. Corbin.* This is a substantial change from their position in the district court. There, they agreed that the issue is whether the government has breached the Idaho Plea Bargain Agreement,[2] a question to be answered by borrowing this court's double jeopardy analysis in *Thomas.*

Appellants also fail to address the significant obstacles that lie in their path to *Grady v. Corbin* relief. First, we would have to hold that jeopardy attached to the Idaho conspiracy count, for Fifth Amendment purposes, when the government dismissed it pursuant to the Plea Bargain Agreement, a question we left open in *United States v. Williams,* 534 F.2d 119, 120 (8th Cir.1976). *See Fransaw v. Lynaugh,* 810 F.2d 518, 523–24 n. 9 (5th Cir. 1987). Second, we would have to hold that *Grady v. Corbin* is fully applicable to conspiracies and other complex or continuing crimes, an issue that has recently divided other circuits. *Compare United States v. Gonzalez,* 921 F.2d 1530, 1536–39 (11th Cir. 1991), *cert. denied,* — U.S. —, 112 S.Ct. 178, 116 L.Ed.2d 140 (1991), and *United States v. Pungitore,* 910 F.2d 1084 (3d Cir. 1990), *cert. denied,* — U.S. —, 111 S.Ct. 2009, 114 L.Ed.2d 98 (1991); with *United States v. Felix,* 926 F.2d 1522 (10th Cir. 1991), *pet'n for cert. granted,* — U.S. —, 112 S.Ct. 47, 116 L.Ed.2d 25 (1991), and *United States v. Calderone,* 917 F.2d 717 (2d Cir.1990), *pet'n for cert. filed,* No. 90–1527.

We decline to address these issues because they were not raised in the district court and are not properly before us. We agree with the district court that the only question here is whether the government breached the plea agreement, a question that turns, on the facts of this case, upon whether the Idaho and Arkansas indictments alleged the same conspiracy under the *Thomas* test. Moreover, as a practical matter, we believe that this breach of plea agreement inquiry, and the double jeopardy issue appellants seek to present for the first time on appeal, are virtually the same.[3]

**2.** As the government conceded below, that agreement is enforceable. *See, e.g., United States v. Nevils,* 897 F.2d 300, 309 (8th Cir.1990).

**3.** Although *Grady v. Corbin* expands double jeopardy protection in many successive prosecu-

tion cases, we believe that *Grady* would add nothing to the *Thomas* analysis in this case. There are three essential elements to this drug conspiracy charge under 21 U.S.C. § 846: that two or more people agreed to make and sell

■ Turning to the *Thomas* test, the ultimate question is whether a series of events comprises one conspiracy or two. That question is analyzed by looking to the totality of the circumstances surrounding the two alleged conspiracies, in particular focusing on five factors: (1) the time the conspiracies ran; (2) the conspirators charged; (3) the statutory offenses involved; (4) the overt acts committed in furtherance of the conspiracy; and (5) the places where these events took place. *Thomas*, 759 F.2d at 662.

■ In *Thomas*, as in most successive prosecution double jeopardy cases, the first prosecution had been tried, so the second court had a record of what the first prosecution was all about. Here, on the other hand, there is only the dismissed Count One of the Idaho indictment. Moreover, appellants did not wait until after the Arkansas trial to seek their final[4] ruling on these double jeopardy issues. Thus, on this record, the district court's ruling was properly based upon a comparison of the two indictments on their face, taking into account the government's representations as to its intended proof in the Arkansas trial. *Compare United States v. Tanner*, 860 F.2d 864, 867 (8th Cir.1988) (similar comparison appropriate in determining double jeopardy claim based upon prior guilty plea).

On the face of the two indictments, Kirk and Ivy have two *Thomas* factors in their favor: the same statutory offenses are charged, and there is a substantial overlap in the time the conspiracies are alleged to have run. However, there is substantial dissimilarity on the other three factors. Kirk and Ivy are the only two conspirators named in both indictments—there is no overlap between the two Rapozos charged in the Idaho indictment and the other thirteen conspirators named in the Arkansas indictment. In addition, the Arkansas indictment charges a more far-flung conspiracy, reaching from the Mississippi Valley to the Pacific Northwest, with drug labs in Oklahoma and Oregon at its core.

Most importantly, for purposes of facially comparing the two indictments, there is practically no overlap between the forty overt acts alleged in the Arkansas indictment and the nineteen overt acts alleged in the Idaho indictment. And there is no evidence that "the respective indictments artificially circumscribe [a single] conspiracy," as there was in *United States v. Tercero*, 580 F.2d 312, 315 (8th Cir.1978). Under these circumstances, we agree with the district court that the government met its burden under *Thomas* of proving "that two separate conspiracies are charged." 759 F.2d at 662.

## C.

■ Finally, Kirk and Ivy allege that the government should be equitably estopped by reason of the Idaho plea bargaining negotiations to prosecute the Arkansas indictment. We have carefully considered the record as it relates to this assertion, and we conclude that it is without merit.

methamphetamine, that the defendants joined the agreement, and that they knew the purpose of the agreement at the time they joined. *United States v. Figueroa*, 900 F.2d 1211, 1219–1220 (8th Cir.1990) (quoting Eighth Circuit Model Jury Instruction). Proof of an overt act is not required. *Id.* at 1218. Unless the conspiracy agreements are the same, which is the focus of the *Thomas* inquiry, the government clearly will not be required to prove any of these elements of the Arkansas conspiracy by proving the conspiracy charged in Count One of the Idaho indictment. That is the end of the *Grady* inquiry as the Supreme Court has thus far defined it. In addition, the ease with which the Arkansas indictment passes our *Thomas* test makes us comfortable that this prosecution would not violate *Grady* regardless of how that decision may be applied to successive conspiracy prosecutions in the future.

**4.** Defendants are permitted an interlocutory appeal on the double jeopardy issue to ensure their protection against multiple trials. *Abney v. United States*, 431 U.S. at 662, 97 S.Ct. at 2041. But a precondition to such an appeal is that the collateral double jeopardy ruling being appealed is "a final rejection of a criminal defendant's double jeopardy claim." *Id.* at 659, 97 S.Ct. at 2040. Thus, to the extent that Kirk and Ivy, who have never been tried for anything, might have developed a better record on the multiple prosecution issue by letting the government put in its evidence in the Arkansas case, they have foregone that opportunity by taking this interlocutory appeal.

Appellants' attorneys tried but failed to negotiate a provision in the Idaho plea agreement barring further prosecution in Arkansas. Therefore, we agree with the district court that prior statements allegedly made during the course of the Idaho negotiations cannot be the basis for an estoppel.

## II.

■ We turn now to the double jeopardy claims of Standefer, Glasco, and Edwards. During 1987, they were tried three times in the Eastern District of Oklahoma on charges that, if adjudicated, would preclude this Arkansas prosecution. Each of those trials ended in mistrial, two at the request of the defendants and one when the jury could not agree on a verdict. Appellants argue that the two requested mistrials resulted from a pattern of prosecutorial overreaching that should preclude their retrial on the same charges in Arkansas.

■ Absent prosecutorial misconduct, when a mistrial is declared at the request of a criminal defendant, the Double Jeopardy Clause does not bar a second prosecution. See United States v. Dinitz, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). Double jeopardy principles are implicated, however, when the defendant's mistrial motion results from prosecutorial misconduct. In Oregon v. Kennedy, the Supreme Court announced a new, more restrictive standard for determining when prosecutorial misconduct will bar a successive prosecution:

> Only where the governmental conduct in question is intended to "goad" the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion.

456 U.S. at 676, 102 S.Ct. at 2089. As the district court recognized, this standard governs appellants' double jeopardy motion in this case.

In the Oklahoma proceedings, the first mistrial occurred when defense counsel objected that the testimony of one government witness differed from the prosecutors' disclosures during discovery. In

granting defendants a mistrial, the court stated that the prosecution had not "intentionally done anything to mislead [defense counsel] ... or mislead the court." The third mistrial occurred because a different prosecutor had not produced notes of an FBI interview of a trial witness during discovery.

In rejecting appellants' motion to dismiss, the district court expressly found that this government conduct in the Oklahoma trials was not intended to goad the defendants into moving for a mistrial. This finding is not clearly erroneous and reflects the district court's judgment, with which we agree, that the prosecutor's conduct did not reflect "an intent to subvert the protections afforded by the Double Jeopardy Clause." Wassall v. Ryan, 705 F.2d 970, 971 (8th Cir.1983).

■ Appellants argue, however, that the successive Oklahoma mistrials reflect a pattern of prosecutorial misconduct that should satisfy the Kennedy standard. However, in Kennedy the Supreme Court expressly rejected broader standards such as "bad faith conduct," "harassment," and "overreaching" in adopting its "intent to goad" test. We agree with appellants that successive mistrials caused by prosecutorial blunders might in some cases evidence an intent to prejudice rights secured by the Double Jeopardy Clause. But we find no such evidence in this case, in which the successive mistakes were made during discovery by different prosecutors, and there is nothing to suggest that the prosecution provoked either mistrial because the trial was proceeding favorably to defendants. Under these circumstances, appellants' "pattern" argument does not persuade us that the district court misapplied Kennedy.

■ Finally, we find it significant that appellants failed to make this argument to the district judge in Oklahoma, who was in the best position to judge whether the Kennedy standard had been violated. Following the third mistrial, the Oklahoma court expressly invited appellants to move for dismissal with prejudice, which would have produced an adjudication for double jeopar-

dy purposes. Instead, Standefer and Edwards consented to the prosecution's request for dismissal without prejudice. Double jeopardy rights can be waived. *See Hartung v. Omodt,* 687 F.2d 1230, 1234 (8th Cir.1982). Even if appellants' action did not amount to a waiver, it clearly supports the district court's decision to deny appellants' double jeopardy motion in this case.

For the foregoing reasons, we affirm the district court's separate orders of September 21, 1990 denying appellants' motions to dismiss.