# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-2378

_____

United States of America

*Plaintiff - Appellee*

v.

Angel Amaya

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Sioux City

_____

Submitted: March 25, 2014
Filed: April 10, 2014

_____

Before LOKEN, BYE, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

After two mistrials, a jury convicted Angel Amaya of conspiracy to launder money and conspiracy to possess with intent to distribute methamphetamine, cocaine, and marijuana. He moved to dismiss, invoking double jeopardy. He also sought sanctions for the government's failure to disclose its GPS surveillance. The district

court[1] denied the motion to dismiss and declined to impose sanctions. Amaya appeals. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

Amaya's first trial began in October 2011. Before trial, the district court partially granted Amaya's motion in limine, ruling that "*witnesses* will not be allowed to opine that the defendant is a 'drug dealer.'" Due to a "docketing snafu," the parties did not receive the sealed order, which was emailed, rather than posted publicly on CM/ECF. The parties learned of the order at a pretrial conference the first day of trial. The government's first witness, DEA Special Agent David Jensen, testified:

> GOVERNMENT: Very broadly, how did that investigation begin?
>
> SPECIAL AGENT JENSEN: Well, we received information about a cash seizure on the interstate. We also received information from the Kansas City Alcohol, Tobacco, and Firearms also known as the ATF about a drug dealer in Sioux City named Angel Amaya.

The court instructed the jury to disregard the statement. Amaya moved for a mistrial. The government opposed. The court declared a mistrial.

Amaya's second trial began in December 2011. At trial, Special Agent Jensen again testified as the first witness. On cross-examination, he said:

> We had a hidden camera in the public right-of-way aimed at his house, so anything on the outside of the front of his house outside of the curtilage which is anybody who driving by could see, we could see that 24 hours a day. We also had an electronic device on his vehicle that we

---

[1]The Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa.

legally put on, and everywhere his vehicle went for the most part we were aware of where he was at whether it be public parking lots, certain locations.

Amaya moved for a mistrial, asserting that the government never disclosed the GPS surveillance. The government opposed. The district court declared a mistrial. Amaya also moved for dismissal with prejudice, arguing a retrial would violate double jeopardy. The government opposed. The court denied the motion.

In February 2012, after the United States Supreme Court decided *United States v. Jones*, 132 S. Ct. 945 (2012), Amaya moved to suppress all information and evidence from the GPS surveillance, as violating the Fourth Amendment. He also argued that the government's failure to disclose the surveillance was a discovery violation. After an evidentiary hearing, the district court denied the motion. ***United States v. Amaya***, 853 F. Supp. 2d 818, 833 (N.D. Iowa 2012). It found no Fourth Amendment violation and determined that the prosecution's failure to disclose the surveillance, although a discovery violation, was inadvertent. ***Id.*** at 825-32. However, the court found that Special Agent Jensen "acted in bad faith in failing to disclose the use of GPS devices to Amaya." ***Id.*** at 832. Specifically, it found that although Jensen claimed to withhold information "in order to comply with written DEA policy," the policy "clearly contradicts Special Agent Jensen's position." ***Id.*** The court set a sanctions hearing on the discovery violation.

In April 2012, the district court held the sanctions hearing. It also heard argument on the government's motion to reconsider the bad-faith finding. The court granted the motion:

> After hearing Special Agent Jensen's testimony, I am convinced that, although he did not refer to the use of GPS devices in his reports, he did so in order to comply with the directives he had received from his DEA supervisors. Special Agent Jensen testified that, several years ago, after

a few incidents in which agents referred to GPS devices in their reports, his supervisor specifically instructed all agents not to mention GPS devices in their reports. Special Agent Jensen has written his reports in compliance with that order ever since. Also, I find that the DEA policy I reviewed is, itself, somewhat confusing, in that it, on the one hand, directs agents to reveal what information they observed, but not how; yet, on the other hand, provides that agents should not create a situation in which defense counsel could suggest they are hiding evidence. Thus, any mistake on Special Agent Jensen's part in reading the policy was an honest one due to the wording of the policy, rather than bad faith.

*United States v. Amaya*, 853 F. Supp. 2d 835, 836-37 (N.D. Iowa 2012). The court did not impose sanctions. *Id.* at 837.

Amaya's third trial began in May 2012. A jury convicted him of conspiracy to launder money and conspiracy to possess with intent to distribute meth, cocaine, and marijuana. The district court sentenced him to 180 months' imprisonment.

II.

Amaya claims that his conviction after two mistrials constitutes double jeopardy. This court reviews the double jeopardy claim de novo and the district court's factual findings for clear error. *United States v. Bearden*, 265 F.3d 732, 735 (8th Cir. 2001) ("We review the district court's denial of a motion to dismiss an indictment on double jeopardy grounds de novo."); *United States v. Radosh*, 490 F.3d 682, 685 (8th Cir. 2007) ("[T[he district court's finding that the government did not intend to provoke a mistrial was not clearly erroneous.").

The Fifth Amendment's Double Jeopardy Clause provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." **U.S. Const. amend. V**. This clause "provides a criminal defendant with three protections. The first two guard against successive prosecution, either after an acquittal or after

a conviction." ***Dodge v. Robinson***, 625 F.3d 1014, 1017 (8th Cir. 2010). The third protects against "multiple punishments for the same offense." ***Bally v. Kemna***, 65 F.3d 104, 106 (8th Cir. 1995), *quoting* ***Ohio v. Johnson***, 467 U.S. 493, 497-98 (1984), ***Brown v. Ohio***, 432 U.S. 161, 165 (1977). The clause does not, however, "offer a guarantee to the defendant that the State will vindicate its societal interest in the enforcement of the criminal laws in one proceeding." ***Oregon v. Kennedy***, 456 U.S. 671, 672 (1982). "[W]here the defendant moves for a mistrial," double jeopardy bars retrial "where the prosecutor's actions giving rise to the motion for mistrial were done 'in order to goad the [defendant] into requesting a mistrial.'" ***Id.*** at 673, *quoting* ***United States v. Dinitz***, 424 U.S. 600, 611 (1976). "Absent intent to provoke a mistrial, a prosecutor's error in questioning a witness, improper remark in a closing statement, and even extensive misconduct do not prevent reprosecution." ***United States v. Beeks***, 266 F.3d 880, 882 (8th Cir. 2001) (per curiam).

### A.

Amaya primarily argues that the government's acts in the second trial—Agent Jensen testifying about GPS surveillance despite the government's failure to disclose it—were "designed to provoke a mistrial." Denying Amaya's motion to dismiss, the district court found "absolutely no evidence . . . that the prosecution intended to goad the defendant . . . into moving for a mistrial" (internal citations omitted).

The district court found that the government's failure to disclose the GPS surveillance was inadvertent:

> The prosecution admits that its failure to provide notice of the GPS devices to the defendants was a pretrial discovery violation. *See* Resistance at 6 (docket no. 291). However, the prosecution has explained that this mistake was inadvertent, and the defendants have given me no reason to doubt the prosecution's explanation.

The district court elaborated on this finding in the orders on Amaya's motion to suppress and the government's motion for reconsideration:

> There were two causes for the prosecution's failure to apprise Amaya of the use of GPS monitoring before trial. First, the prosecution failed to include in discovery the affidavit in support of the Title III wiretap application. The affidavit referred to agents' attempted—though unsuccessful—use of GPS monitoring. This affidavit, if present in the discovery file, would, at least, have given Amaya some notice that GPS monitoring had been involved in his case. The prosecution has indicated that the omission of the affidavit was an inadvertent mistake, and Amaya has given me no reason to doubt the prosecution's explanation. Second, Special Agent Jensen did not indicate, in the reports Amaya *did* receive in discovery, that agents had used GPS monitoring. Rather, he used "surveillance showed" to indicate GPS monitoring. He testified that "at the time I felt I was safeguarding a sensitive investigative technique, and I thought I was following policy."

*Amaya*, 853 F. Supp. 2d at 831-32 (order on motion to suppress).

> After hearing Special Agent Jensen's testimony, I am convinced that, although he did not refer to the use of GPS devices in his reports, he did so in order to comply with the directives he had received from his DEA supervisors. . . . Thus, any mistake on Special Agent Jensen's part in reading the policy was an honest one due to the wording of the policy, rather than bad faith.

*Amaya*, 853 F. Supp. 2d at 836-37 (order on motion for reconsideration).

The district court also found that Agent Jensen's testimony was not intended to goad Amaya into moving for a mistrial. Jensen was the government's first witness; there is no evidence that the government wanted to provoke a mistrial at this early stage. *Radosh*, 490 F.3d at 685 ("The 'snitch' testimony came early in the first trial. Radosh fails to point out how the trial was going poorly for the government or any

reason why the government would wish to risk a double jeopardy dismissal by provoking a mistrial at that stage of the proceedings."). Additionally, the government would not reasonably believe that Jensen would testify about the GPS surveillance. He completed his entire examination in the first trial and his direct examination in the second without mentioning it.

It is also "highly unlikely the government manufactured pre-trial discovery errors to halt a trial that was not going well." *United States v. Washington*, 198 F.3d 721, 725 (8th Cir. 1999). The district court said that

> it stretches the bounds of credulity to think that the prosecutor or Agent Jensen, would engineer a discovery violation well in advance of trial, with the calculated hope that the defendants would realize the discovery omission at the precise moment when the prosecution allegedly sensed its case was failing.

Finally, contrary to Amaya's assertions, the government sufficiently opposed the mistrial. *See United States v. Jordan*, 429 F.3d 1032, 1037 (11th Cir. 2005) (considering a prosecutor's vigorous opposition to a mistrial as one factor in determining whether the government provoked the defendant into moving for a mistrial). The district court found that "the prosecution did oppose the defendants' oral motion for mistrial. The fact that the prosecution could not, on the spot, advance a full-fledged argument in opposition speaks to the time pressures of trial, not to any intent to provoke a mistrial."

The district court's factual finding that the government did not intend to goad Amaya into requesting a mistrial is not clearly erroneous. *See United States v. Standefer*, 948 F.2d 426, 432 (8th Cir. 1991) ("In rejecting appellants' motion to dismiss, the district court expressly found that this government conduct in the Oklahoma trials was not intended to goad the defendants into moving for a mistrial. This finding is not clearly erroneous and reflects the district court's judgment, with

which we agree, that the prosecutor's conduct did not reflect 'an intent to subvert the protections afforded by the Double Jeopardy Clause.'"), *quoting **Wassall v. Ryan***, 705 F.2d 970, 971 (8th Cir. 1983).

B.

Amaya also suggests that the successive mistrials "reflect a pattern of prosecutorial misconduct" implicating double jeopardy. ***Standefer***, 948 F.2d at 432. He says:

> The question becomes—at what point is enough-enough. How many attempts does the government get to try to gain a conviction against a specific defendant before Double Jeopardy protections kick in and the criminal prosecution is over. If the first two mistrials were caused by Angel, then in all likelihood Double Jeopardy might not apply. When there were two actual and a near third mistrial, Angel has been subjected to embarrassment, expense and ordeal three times.

Amaya did not brief this argument in district court but argued it at the hearing on his motion for dismissal. The district court did not expressly rule on whether the government's act in the first trial—Special Agent Jensen calling Amaya a drug dealer—was intended to provoke a mistrial. However, in a footnote of the order denying Amaya's motion to dismiss, the court said that the first mistrial was "the result of a docketing snafu—the prosecutor did not receive the sealed motion in limine ruling prior to the trial and, thus, did not inform his witnesses of this court's restrictions on evidence in this case."

Amaya presents no evidence that the government intended to provoke a mistrial. The question to Special Agent Jensen was general: "Very broadly, how did that investigation begin." Like the second trial, Jensen was the government's first witness; there is no evidence that the government wanted to provoke a mistrial at this early stage. ***Radosh***, 490 F.3d at 685. Finally, the statement did not necessitate a

mistrial. The district court immediately instructed the jury to disregard the statement. *See* ***United States v. Branch***, 591 F.3d 602, 607 (8th Cir. 2009) ("We have held that the 'exposure of a jury to improper testimony ordinarily is cured by measures less drastic than a mistrial, such as an instruction to the jury to disregard the testimony.'"), *quoting* ***United States v. Sherman***, 440 F.3d 982, 987 (8th Cir. 2006). Amaya then moved for a mistrial. ***Kennedy***, 456 U.S. at 676 ("A defendant's motion for mistrial constitutes 'a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact.'"), *quoting* ***United States v. Scott***, 437 U.S. 82, 93 (1978). The district court's factual finding that Amaya's first mistrial "was the result of a docketing snafu" is not clearly erroneous.

Neither of Amaya's mistrials resulted from government acts intended to provoke a mistrial. Amaya's conviction after two mistrials does not violate double jeopardy. *See* ***Standefer***, 948 F.2d at 432 (double jeopardy did not preclude retrial after three mistrials, two of which resulted from prosecutorial misconduct).

## III.

Amaya contends that the district court should have dismissed the indictment or otherwise sanctioned the government for failing to disclose the GPS surveillance. Discovery sanctions are reviewed for abuse of discretion. ***United States v. Polk***, 715 F.3d 238, 249 (8th Cir. 2013). "The district court has broad discretion in imposing sanctions on parties for failing to comply with discovery orders." ***United States v. Davis***, 244 F.3d 666, 670 (8th Cir. 2001). This court considers: "(1) whether the Government acted in bad faith and the reason(s) for delay in production; (2) whether there is any prejudice to the defendant; and (3) whether any lesser sanction is appropriate to secure future Government compliance." ***United States v. Pherigo***, 327 F.3d 690, 694 (8th Cir. 2003). "To obtain dismissal of an indictment, a defendant must generally show both flagrant misconduct and substantial prejudice." ***United States v. Tulk***, 171 F.3d 596, 598 (8th Cir. 1999).

The district court found (and the parties agree) that the government violated the stipulated discovery order by failing to disclose the GPS surveillance. However, in its sanctions order, the court determined that the government did not act in bad faith, that any prejudice to Amaya was remedied, and that no further sanction was necessary to ensure future compliance.

First, the district court found that the government did not act in bad faith by failing to disclose the GPS surveillance. Special Agent Jensen reported the surveillance before trial in a Title III affidavit signed by the court. Although that affidavit was not in the discovery file, the court determined that the error resulted from inadvertent filing. At Amaya's detention and preliminary examination hearing in May 2011, Jensen also disclosed physical and electronic surveillance and a wiretap.

Second, the district court found that any prejudice to Amaya from "delay, stress, and added expense" was "modest," and had, "for the most part," been remedied by the mistrial and the opportunity to file a motion to suppress.

Third, the district court found that sanctions were unnecessary to ensure future compliance: "[T]he prosecution indicates that, since the suppression hearing, the local drug task force has modified its policies regarding references to GPS monitoring in reports, in order to address the problem that arose here."

The district court did not abuse its discretion in declining to impose sanctions.[2]

\* \* \* \* \* \* \*

The judgment is affirmed.

_____

---

[2]Amaya also argues that the government's warrantless GPS surveillance violated Federal Rule of Criminal Procedure 41(f)(2). Amaya did not raise this argument in district court. It is waived. *Morrow v. Greyhound Lines, Inc.*, 541 F.2d 713, 724 (8th Cir. 1976).