44 F.3d 1364
 UNITED STATES of America, Appellee,
v.
Delores BENNETT, Appellant.
UNITED STATES of America, Appellee,
v.
Noble Laverne BENNETT, also known as Turtle, also known as
Little Brother, Appellant.
UNITED STATES of America, Appellee,
v.
George DIXON, also known as Willie Mack, also known as Dick,
also known as Big Brother, Appellant.
UNITED STATES of America, Appellee,
v.
Darryl GILLESPIE, also known as Hawk, also known as Hawkeye,
Appellant.
 Nos. 93-3958, 93-3959, 93-3984 and 93-3988.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 14, 1994.
Decided Jan. 4, 1995.
Rehearing and Suggestion for Rehearing
En Banc Denied
Feb. 13, 1995 in No. 93-3958.
 
 Dorothy Danforth, St. Louis, MO, argued, for Delores Bennett.
 James Martin, St. Louis, MO, argued, for Noble Bennett.
 Burton Shostak, St. Louis, MO, argued, for George Dixon.
 Lawrence Fleming, St. Louis, MO, argued, for Darryl Gillespie.
 Sam Bertolet, Asst. U.S. Atty., St. Louis, MO, argued (Dean Hoag, Asst. U.S. Atty., on the brief), for appellee.
 Before WOLLMAN, BEAM, and LOKEN, Circuit Judges.
 WOLLMAN, Circuit Judge.
 
 
 1
 This is an interlocutory appeal from an order of the district court[1] denying defendants' motion to dismiss an indictment returned against them. Appellants argue that the indictment is barred by the Double Jeopardy Clause of the Fifth Amendment. We hold that the charges alleged in the indictment are not the "same offence" as the charges on which appellants were previously indicted, and we therefore affirm the judgment.
 
 I.
 
 2
 On April 21, 1989, appellants Noble Bennett, Delores Bennett, George Dixon, Darryl Gillespie, and thirty-one others were indicted and charged with conspiracy to distribute heroin from 1984 to 1989, substantive drug offenses, and tax offenses (Bennett I ). Noble Bennett, the alleged ringleader of the conspiracy, was charged with one count of continuing criminal enterprise (CCE), 21 U.S.C. Sec. 848, one count of conspiracy to distribute heroin, 21 U.S.C. Sec. 846, two counts of distribution of heroin, 21 U.S.C. Sec. 841, two counts of tax fraud, 26 U.S.C. Secs. 7201, 7206(1), and one count of conspiracy to commit tax fraud, 18 U.S.C. Sec. 371. Delores Bennett was charged with one count of conspiracy to distribute heroin, 21 U.S.C. Sec. 846, two counts of tax fraud, 26 U.S.C. Secs. 7201, 7206(1), and one count of conspiracy to commit tax fraud, 18 U.S.C. Sec. 371. George Dixon was charged with one count of CCE, 21 U.S.C. Sec. 848, one count of conspiracy to distribute heroin, 21 U.S.C. Sec. 846, two counts of distribution of heroin, 21 U.S.C. Sec. 841, three counts of tax fraud, 26 U.S.C. Sec. 7206(1), and one count of conspiracy to commit tax fraud, 18 U.S.C. Sec. 371. Darryl Gillespie was charged with one count of conspiracy to distribute heroin, 18 U.S.C. Sec. 846.[2]
 
 
 3
 The trial of Noble Bennett, Delores Bennett, Dixon, and others in Bennett I began on May 7, 1990. On May 8, 1990, after the jury was sworn, but before any evidence was heard, the court declared a mistrial because of a television news report that had aired the previous evening which revealed certain facts not mentioned in the indictment. The district court immediately rescheduled a new trial and denied the defendants' motions to dismiss based on double jeopardy. On appeal, we held that the government's attempt to retry the defendants was barred on grounds of double jeopardy and ordered the case dismissed because there was no "manifest necessity" for the district court's sua sponte declaration of a mistrial. United States v. Dixon, 913 F.2d 1305 (8th Cir.1990).
 
 
 4
 On November 15, 1990, appellants and four others were charged in the instant two-count indictment under the Racketeer Influenced and Corrupt Organizations Act (RICO) (Bennett II ). Count I alleges that from 1977 to 1989, appellants participated in an enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. Sec. 1962(c). Count II charges each of the appellants with conspiracy to violate RICO, in violation of 18 U.S.C. Sec. 1962(d). More specifically, the indictment charges appellants with conducting or participating, and conspiring to conduct or participate, in the conduct of a drug enterprise's (the "Bennett enterprise") affairs through a pattern of racketeering involving the predicate acts of drug possession and distribution, conspiracy, murder, and investment of drug proceeds.
 
 
 5
 Appellants filed motions to dismiss the Bennett II indictment, alleging that prosecution of the RICO charges is violative of the Double Jeopardy Clause. The district court denied the motions, and this interlocutory appeal followed. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291, see Abney v. United States, 431 U.S. 651, 662, 97 S.Ct. 2034, 2042, 52 L.Ed.2d 651 (1977), and now affirm.
 
 II.
 
 6
 Appellants Noble Bennett, Dixon, and Gillespie contend that the district court erred in denying their motions to dismiss because the RICO charges alleged in Bennett II and the conspiracy offenses for which they were charged in Bennett I both involve an attempt by the government to prosecute the same conspiracy. Delores Bennett argues that the prior conspiracy to distribute heroin charge is a lesser included offense of the RICO charges alleged in the instant indictment. Gillespie also argues that double jeopardy bars the current prosecution because it will result in a second punishment of conduct for which he was previously punished in Bennett I. We address each of these arguments in turn.[3]
 
 III.
 
 7
 The Double Jeopardy Clause of the Fifth Amendment declares: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life and limb...." U.S. Const. amend. V. Under this clause, a defendant is protected from both successive prosecutions and multiple punishments for the same criminal offense. North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969); United States v. Dixon, --- U.S. ----, ----, 113 S.Ct. 2849, 2860, 125 L.Ed.2d 556 (1993). The clause further prohibits the government from subdividing "a single criminal conspiracy into multiple violations of one conspiracy statute." United States v. Thomas, 759 F.2d 659, 661 (8th Cir.1985); United States v. Kienzle, 896 F.2d 326, 328 (8th Cir.1990) (both citing Braverman v. United States, 317 U.S. 49, 52-53, 63 S.Ct. 99, 101, 87 L.Ed. 23 (1942)).[4]
 
 
 8
 In order to support a claim of double jeopardy, a defendant must show that the two offenses charged are in law and fact the same offense. United States v. Okolie, 3 F.3d 287, 289 (8th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 1203, 127 L.Ed.2d 551 (1994); see also United States v. Benefield, 874 F.2d 1503, 1505 (11th Cir.1989). The defendant bears the initial burden of showing a non-frivolous claim of double jeopardy. Okolie, 3 F.3d at 289. Once the defendant has met this threshold requirement, the burden shifts to the government to show by a preponderance of the evidence that the two indictments at issue involve two separate offenses. Id. On appeal, the district court's denial of a motion to dismiss an indictment on the grounds of double jeopardy is reviewed de novo. United States v. Ivory, 29 F.3d 1307, 1310 (8th Cir.1994).
 
 A.
 
 9
 Appellants Noble Bennett and George Dixon were formerly prosecuted for two offenses that are relevant to their double jeopardy argument: 1) conspiracy to distribute heroin from 1984-89, in violation of 21 U.S.C. Secs. 841(a)(1), 846; and 2) CCE, in violation of 21 U.S.C. Sec. 848. Darryl Gillespie asserts his double jeopardy claim in light of his guilty plea in Bennett I to one count of conspiracy to distribute heroin. All contend that the district court erred in applying the "same elements" or "Blockburger" test in considering their double jeopardy claims, as opposed to the "totality of the circumstances" test enunciated by this court in United States v. Tercero, 580 F.2d 312 (8th Cir.1978) and United States v. Thomas, 759 F.2d 659 (8th Cir.1985).
 
 
 10
 More specifically, the gravamen of appellants' claims is that the drug conspiracies for which they were prosecuted in Bennett I fall within, or are completely subsumed under, the larger more unified RICO conspiracy[5] alleged in the present indictment. Stated otherwise, appellants contend that the government is attempting to twice prosecute a single long-term narcotics conspiracy. Appellants argue that because the previous conspiracy charges involve essentially the same time periods, co-conspirators, scope of activities, and location as the current RICO conspiracy, there is only a single long-term conspiracy. Thus, they argue, the totality of the circumstances test prohibits the successive prosecution of this same criminal conspiracy.[6] Even assuming that appellants were involved in a single long-term narcotics conspiracy, we conclude that appellants' reliance on the totality of the circumstances test is misplaced and that prosecution of the RICO charges is not barred by double jeopardy.
 
 
 11
 In Braverman v. United States, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942), the Court held that a single agreement with multiple objectives involving separate substantive offenses is only a single conspiracy that is punishable only once under a single conspiracy statute. Id. at 54, 63 S.Ct. at 102. The Court stated that "[t]he single agreement is the prohibited conspiracy, and however diverse its objects it violates but a single statute, § 37 of the Criminal Code." Id. The Court distinguished the situation in Braverman, however, from a charge involving "a single act which violates two statutes." Id. (distinguishing Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932)).
 
 
 12
 In applying the Braverman rule against subdividing a single conspiracy into multiple violations of a single conspiracy statute, we have recognized that the same elements test is of questionable value in analyzing the propriety of successive conspiracy prosecutions. Thomas, 759 F.2d at 662. Because the prosecutor can tailor the overt acts charged in each indictment, the exercise of prosecutorial discretion would enable the government to choose one set of overt acts in one indictment and a different set of overt acts in another indictment, resulting in repeated prosecutions under the same conspiracy statute for what is in reality the same conspiracy. Tercero, 580 F.2d at 314-15. As a result, many courts, including ours, have adopted a "totality of the circumstances" test as a more accurate analysis for determining whether two conspiracies constitute the same offense. Id. at 315; Thomas, 759 F.2d at 662.
 
 
 13
 Under the totality of the circumstances test, the dispositive double jeopardy issue is whether there are two distinct conspiracies or a single overall agreement. See, e.g., United States v. Standefer, 948 F.2d 426, 431 (8th Cir.1991) ("the ultimate question is whether a series of events comprises one conspiracy or two"); Thomas, 759 F.2d at 662 ("[t]he essence of the determination is whether there is one agreement to commit two crimes, or more than one agreement, each with a separate object"). This is so because "[t]he characteristic which defines the scope of a conspiracy is the unlawful agreement, and in order to determine whether the government can prosecute a defendant for more than one conspiracy a court must ordinarily determine whether there was more than one agreement." United States v. Phillips, 664 F.2d 971, 1006 (5th Cir. Unit B 1981), cert. denied, 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982).
 
 
 14
 We have confronted on numerous occasions the double jeopardy implications of successive narcotics conspiracy prosecutions based on the same conspiracy statute. In Tercero, the defendants were first indicted in the District of Minnesota on charges of conspiracy to import marijuana, 21 U.S.C. Sec. 952(a), 963, and conspiracy to distribute marijuana, 21 U.S.C. Secs. 841(a)(1), 846. Shortly thereafter, the defendants were indicted in the District of Arizona and charged with identical violations of the same conspiracy statute. Following their acquittal on the Arizona charges, the defendants moved to dismiss the Minnesota indictment, contending that the Arizona and Minnesota conspiracies were in reality one conspiracy and that prosecution of the Minnesota indictment would violate their double jeopardy rights.
 
 
 15
 We held that "the proper test ... is whether the totality of the circumstances demonstrates that the two alleged conspiracies are in reality the same conspiracy." 580 F.2d at 315. We further held that the "conspiracies to import and distribute marijuana charged in the Minnesota indictment and the conspiracies to import and distribute marijuana charged in the Arizona indictment [were] in reality one single conspiracy[,]" and thus affirmed the district court's dismissal of the Minnesota indictment. Id. at 316; see also United States v. Okolie, 3 F.3d 287 (8th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 1203, 127 L.Ed.2d 551 (1994); United States v. Standefer, 948 F.2d 426 (8th Cir.1991); United States v. Brown, 926 F.2d 779 (8th Cir.1991) (per curiam); United States v. Kienzle, 896 F.2d 326 (8th Cir.1990); United States v. Tanner, 860 F.2d 864 (8th Cir.1988); United States v. Robinson, 774 F.2d 261 (8th Cir.1985) (all applying the totality of the circumstances test in challenges to successive conspiracy prosecutions based on the same conspiracy statute).
 
 
 16
 In contrast to the situations presented in Tercero and its progeny, the present case involves alleged violations of separate and distinct conspiracy statutes. Where multiple prosecutions are based on separate and distinct conspiracy statutes, a finding that there is only one agreement does not necessarily mean that there will always be a double jeopardy violation. "Although the government may not ordinarily separately prosecute a defendant for two conspiracies that are in reality the same conspiracy, or prosecute a defendant for a conspiracy or 'transaction' that is part of a larger conspiracy, under the Blockburger test it is possible for a single criminal agreement or conspiracy to give rise to distinct offenses under specific, separate conspiracy statutes." Phillips, 664 F.2d at 1007. This is due, at least in part, to the fact that it is Congress that establishes and defines offenses. Sanabria v. United States, 437 U.S. 54, 69, 98 S.Ct. 2170, 2181, 57 L.Ed.2d 43 (1978). "Few, if any, limitations are imposed by the Double Jeopardy Clause on the legislative power to define offenses.... [O]nce Congress has defined a statutory offense ..., that prescription determines the scope of protection for a prior conviction or acquittal. Whether a particular course of conduct involves one or more distinct 'offenses' ... depends on this congressional choice." Id. at 69-70, 98 S.Ct. at 2181-82; see also United States v. Dean, 647 F.2d 779, 785 (8th Cir.1981), modified en banc on other grounds, 667 F.2d 729 (8th Cir.), cert. denied, 456 U.S. 1006, 102 S.Ct. 2296, 73 L.Ed.2d 1300 (1982); United States v. Marable, 578 F.2d 151, 154 n. 1 (5th Cir.1978). Consequently, Congress may choose to punish two aspects of conspiratorial behavior without necessarily violating the Fifth Amendment. See United States v. Stricklin, 591 F.2d 1112, 1122 (5th Cir.), cert. denied, 444 U.S. 963, 100 S.Ct. 449, 62 L.Ed.2d 375 (1979).
 
 
 17
 In Albernaz v. United States, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981), the Supreme Court held that a single narcotics conspiracy or agreement may constitute the separate offenses of conspiracy to import marijuana, 21 U.S.C. Sec. 963, and conspiracy to distribute marijuana, 21 U.S.C. Sec. 846. In responding to the defendants' "same conspiracy--same offense" argument, similar to that made here by appellants, the Court stated:
 
 
 18
 Petitioners' contention that a single conspiracy which violates both Sec. 846 and Sec. 963 constitutes the "same offense" for double jeopardy purposes is wrong. We noted in Brown v. Ohio, [432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187] [ (1977) ] that the established test for determining whether two offenses are the "same offense" is the rule set forth in Blockburger--the same rule on which we relied in determining congressional intent ... [C]onspiracy to import marihuana in violation of Sec. 963 and conspiracy to distribute marihuana in violation of Sec. 846 clearly meet the Blockburger standard. It is well settled that a single transaction can give rise to distinct offenses under separate statutes without violating the Double Jeopardy Clause. See, e.g., Harris v. United States, 359 U.S. 19 [79 S.Ct. 560, 3 L.Ed.2d 597] (1959); Gore v. United States, 357 U.S. 386 [78 S.Ct. 1280, 2 L.Ed.2d 1405] (1958). This is true even though the "single transaction" is an agreement or conspiracy. American Tobacco Co. v. United States, 328 U.S. 781 [66 S.Ct. 1125, 90 L.Ed. 1575] (1946).
 
 
 19
 450 U.S. at 344 n. 3, 101 S.Ct. at 1145 n. 3.
 
 
 20
 In United States v. Smith, 574 F.2d 308 (5th Cir.) (per curiam), cert. denied, 439 U.S. 931, 99 S.Ct. 321, 58 L.Ed.2d 325 (1978), the Fifth Circuit faced arguments similar to those pressed here by appellants. There, the defendant was first convicted for conspiracy to distribute marijuana, 21 U.S.C. Sec. 846, and possession of marijuana with intent to distribute, 21 U.S.C. Sec. 841(a)(1). He was subsequently indicted for a substantive RICO violation and conspiracy to violate RICO.
 
 
 21
 Relying on Braverman, the defendant argued that double jeopardy barred the RICO prosecution because the RICO conspiracy and the prior marijuana conspiracy were parts of a single long-term narcotics conspiracy. The court held that Braverman was not controlling because "the marijuana conspiracy and the RICO conspiracy, even if parts of a single larger conspiracy, are separate offenses...." Id. at 311. The court noted that, although the RICO conspiracy and marijuana conspiracy charges shared one common element--an agreement--"the resemblance end[ed] there[ ]" because both crimes required proof of different essential facts and elements. Id.
 
 
 22
 In United States v. Townsley, 843 F.2d 1070 (8th Cir.1988), modified en banc on other grounds, 856 F.2d 1189 (8th Cir.1988), cert. dismissed, 499 U.S. 944, 111 S.Ct. 1406, 113 L.Ed.2d 461 (1991), the defendants were convicted on various conspiracy charges involving vote fraud, 18 U.S.C. Sec. 241, mail fraud, 18 U.S.C. Sec. 371, and obstruction of justice, 18 U.S.C. Sec. 1503. On appeal, the defendants argued that their convictions for conspiracy to commit vote fraud and mail fraud could not stand because both counts charged the same conspiracy. Both conspiracies were alleged to have occurred during the same time period and in the same geographic area. In addition, there was substantial overlap in the participants in both conspiracies, and the overarching goal of both conspiracies was the same.
 
 
 23
 We stated that "[d]espite the similarity, each count alleged a violation of a separate criminal statute," and held that " '[t]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.' " Id. at 1081 (quoting Albernaz, 450 U.S. at 337, 101 S.Ct. at 1141).
 
 
 24
 Even assuming that Bennett I and Bennett II involve the prosecution of a single long-term narcotics conspiracy, the conspiracy offenses alleged in these separate prosecutions arise from separate and distinct criminal statutes. Applying the totality of the circumstances test to a situation where separate and distinct conspiracy statutes are involved would run afoul of the well-settled principle that "a single transaction can give rise to distinct offenses under separate statutes without violating the Double Jeopardy Clause," Albernaz, 450 U.S. at 344 n. 3, 101 S.Ct. at 1145 n. 3, regardless of "whether the offenses be substantive crimes ... or crimes of conspiracy." United States v. Barton, 647 F.2d 224, 235 (2d Cir.), cert. denied, 454 U.S. 857, 102 S.Ct. 307, 70 L.Ed.2d 152 (1981) (internal citations omitted).[7] Accordingly, we hold that where a single conspiracy is alleged to have violated separate and distinct criminal statutes, the totality of the circumstances test does not govern the double jeopardy inquiry.
 
 
 25
 Appellants make a similar argument with respect to the substantive RICO charge. They focus on the indictment's description of the "Bennett enterprise" as a group of individuals who were associated in fact for the purposes of, inter alia, establishing and maintaining a narcotics networking enterprise that processed, distributed, and sold narcotic controlled substances. Based on this description of the Bennett enterprise, appellants contend that, under section 1962(c), the enterprise itself constitutes an agreement. Thus, according to appellants, the government, although now labeling the conspiracy an enterprise, is again prosecuting the same conspiracy. This claim ignores the substantive nature of a RICO offense.
 
 
 26
 "It is well established that the essence of a conspiracy is an agreement to commit an illegal act." United States v. Dijan, 37 F.3d 398, 402 (8th Cir.1994). Section 1962(c), on the other hand, does not require proof of a conspiratorial agreement. It requires only that an individual furthered a racketeering enterprise through a pattern of racketeering activity. Furthermore, proof of an individual's participation in an association in fact will not necessarily establish his membership in a conspiracy. In order to prove that an individual participated in a enterprise through a pattern of racketeering activity, the government must prove only that the individual "associated with" the enterprise and that he engaged in two acts of racketeering that were related to the activities of, or affected, that enterprise. See, e.g., United States v. Ellison, 793 F.2d 942, 950 (8th Cir.), cert. denied, 479 U.S. 937, 107 S.Ct. 415, 93 L.Ed.2d 366 (1986); Phillips, 664 F.2d at 1011. Conversely, in order to prove that an individual joined a conspiracy to violate RICO under section 1962(d), the government must establish that the individual "objectively manifested an agreement to participate directly, or indirectly, in the affairs of an enterprise through the commission of two or more predicate crimes." Phillips, 664 F.2d at 1012. It is true that where the enterprise is defined as an association in fact, proof of that enterprise may prove an unlawful agreement. United States v. Pungitore, 910 F.2d 1084, 1114 (3rd Cir.1990), cert. denied, 500 U.S. 915, 111 S.Ct. 2009, 114 L.Ed.2d 98 (1991). A substantive RICO charge, however, remains just that--a substantive charge--and not a conspiracy. Id.; Phillips, 664 F.2d at 1014. Even if we were to accept appellants' characterization of a substantive RICO offense as an "enterprise conspiracy," an enterprise conspiracy under section 1962(c), like the RICO conspiracy offense under section 1962(d), arises from a criminal statute that is separate and distinct from the statutory violations alleged in Bennett I. See Smith, 574 F.2d at 311. Therefore, the totality of the circumstances test simply does not apply.B.
 
 
 27
 Having determined that the totality of the circumstances test does not apply to this case, we conclude that our disposition of appellants' double jeopardy claims is governed by the Supreme Court's decision in Garrett v. United States, 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985). In Garrett, the Court held that there was no double jeopardy violation where the government used a prior marijuana importation conviction as a predicate offense for a later CCE prosecution. Id. at 795, 105 S.Ct. at 2419-20. In reaching this conclusion, the Court announced a two-step analysis for determining whether successive prosecutions constitute a double jeopardy violation. First, a court must ask whether Congress "intended that each violation be a separate offense." Id. at 778, 105 S.Ct. at 2411. If it did not, there is no statutory basis for the two prosecutions, and the double jeopardy inquiry is at an end. Id. Second, if Congress intended separate prosecutions, a court must then determine whether the relevant offenses constitute the "same offense" within the meaning of the Double Jeopardy Clause. Id. at 786, 105 S.Ct. at 2415.
 
 
 28
 Applying the first step of the Garrett test, we must consider whether Congress intended to authorize multiple prosecutions for RICO offenses and drug conspiracies under 21 U.S.C. Secs. 846, 848. In United States v. Kragness, 830 F.2d 842 (8th Cir.1987), we held that Congress intended to permit multiple punishment for RICO conspiracy and one or more drug conspiracies. Id. at 864. We noted that RICO's statutory language specifically provides that "[n]othing in [RICO] shall supersede any provision of Federal ... law imposing criminal penalties ... in addition to those provided for in [RICO]." Id. at 864 (quoting RICO, Pub.L. No. 91-452, Sec. 904(b), 84 Stat. 947) (brackets in original).
 
 
 29
 Although Kragness involved multiple punishments rather than successive prosecutions, this distinction is irrelevant for purposes of determining congressional intent. There is "nothing in the RICO statutory scheme which would suggest that Congress intended to preclude separate convictions," id., regardless of whether separate convictions result from simultaneous or successive prosecutions. Accordingly, we conclude, as have other circuits, that Congress intended to permit separate prosecutions for drug conspiracy offenses under sections 846 and 848 and for substantive RICO and RICO conspiracy offenses. Accord United States v. Crosby, 20 F.3d 480, 484 (D.C.Cir.), cert. denied, --- U.S. ----, 115 S.Ct. 221, 130 L.Ed.2d 148 (1994); United States v. Deshaw, 974 F.2d 667, 672 (5th Cir.1992); United States v. Boldin, 772 F.2d 719, 729-30 (11th Cir.1985), modified in part on other grounds, 779 F.2d 618 (11th Cir.), cert. denied, 475 U.S. 1048, 106 S.Ct. 1269, 89 L.Ed.2d 577 (1986); United States v. Thomas, 757 F.2d 1359, 1370-71 (2d Cir.), cert. denied, 474 U.S. 819, 106 S.Ct. 66, 88 L.Ed.2d 54 (1985).
 
 
 30
 Having concluded that Congress intended that RICO offenses be separate from drug conspiracy offenses under sections 846 and 848, we must next ask whether such offenses are the same within the meaning of the Double Jeopardy Clause. We hold that they are not.
 
 
 31
 "The double jeopardy bar applies only to prosecutions or convictions which cannot survive the 'same elements' test." United States v. Frayer, 9 F.3d 1367, 1372 (8th Cir.1993) (citing Dixon, --- U.S. at ----, 113 S.Ct. at 2859), cert. denied, --- U.S. ----, 115 S.Ct. 77, 130 L.Ed.2d 31 (1994). "The critical issue in determining whether or not two crimes are the 'same offense' is whether they consist of the same elements." United States v. Rodgers, 18 F.3d 1425, 1428 (8th Cir.1994). The "same elements" test as articulated in Blockburger, "focuses on the offenses and whether each offense requires proof of a fact the other does not." Id. If such a distinction exists, "the Double Jeopardy Clause does not bar additional punishment and subsequent prosecution," Frayer, 9 F.3d at 1372, "notwithstanding a substantial overlap in the proof offered to establish the crimes." Iannelli v. United States, 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1293 n. 17, 43 L.Ed.2d 616 (1975).[8]
 
 
 32
 Although the Blockburger test is easily recited, it is not so easily applied. Indeed, we note that courts are split on whether the test is to be applied by looking solely to the statutory elements of the offense, or by going beyond the statute and looking at the underlying facts or averments in the indictment. Compare United States v. Adams, 1 F.3d 1566, 1574 (11th Cir.1993) ("the Blockburger test is to be applied to the statutory elements underlying each indictment, or count, not to the averments that go beyond the statutory elements"), cert. denied, --- U.S. ----, 114 S.Ct. 1310, 127 L.Ed.2d 660 (1994) with United States v. Sampol, 636 F.2d 621, 652 (D.C.Cir.1980) ("the prohibition in the Constitution against placing an accused twice in jeopardy 'for the same offense' is directed at the actual 'offense' with which he is charged and not only at the violated statutes"). There is also disagreement on this issue among members of the Supreme Court. See Dixon, --- U.S. at ---- - ----, 113 S.Ct. at 2855-61 (Scalia, J., joined by Kennedy, J.); id. at ---- - ----, 113 S.Ct. at 2865-69 (Rehnquist, C.J., joined by O'Connor, J., and Thomas, J.); id. at ---- - ----, 113 S.Ct. at 2873-74 (White, J., joined by Stevens, J.); and id. at ---- - ----, 113 S.Ct. at 2890-91 (Souter, J., joined by Stevens, J.). Finally, we note that some of our own cases reflect differing applications of Blockburger. Compare Dean, 647 F.2d at 785 n. 14 (holding that Travel Act violations, 18 U.S.C. Sec. 1952, and substantive RICO offense based on the Travel Act violations were not the same offenses) with Kragness, 830 F.2d at 863-64 (drug conspiracies and RICO conspiracy based on the drug conspiracies constituted the same offenses). We need not reach this issue, however, because whether we look at the statutory elements or at the underlying facts contained within the indictments, we find no double jeopardy violation in this case.
 
 
 33
 The first step under Blockburger is to identify the relevant statutory elements. To prove a substantive RICO violation, the government must establish: 1) the existence of an enterprise affecting interstate or foreign commerce; 2) the defendant's association with the enterprise; 3) that the defendant participated in the conduct of the enterprise's affairs; and 4) that the defendant's participation was through a pattern of racketeering activity. United States v. Sinito, 723 F.2d 1250, 1260 (6th Cir.1983), cert. denied, 469 U.S. 817, 105 S.Ct. 86, 83 L.Ed.2d 33 (1984); Phillips, 664 F.2d at 1011.
 
 
 34
 A RICO conspiracy requires proof of the additional element of an agreement. Id. "The defendant must have objectively manifested an agreement to participate directly or indirectly, in the affairs of an enterprise through the commission of two or more predicate crimes." Phillips, 664 F.2d at 1012 (internal quotation omitted). It is not necessary that a defendant personally agree to commit the requisite acts, but only that he agree to join the conspiracy. Kragness, 830 F.2d at 860.
 
 
 35
 To prove a CCE offense, the government must establish: 1) a felony violation of the federal narcotics laws; 2) as part of a continuing series of violations; 3) in concert with five or more persons; 4) for whom the defendant is an organizer or supervisor; 5) from which he derives substantial income or resources. United States v. Maull, 806 F.2d 1340, 1342 (8th Cir.1986), cert. denied, 480 U.S. 907, 107 S.Ct. 1352, 94 L.Ed.2d 522 (1987). Finally, to establish a section 846 conspiracy, the government must prove "that an agreement to engage in distributing drugs existed between two or more persons." Rodgers, 18 F.3d at 1428-29.
 
 
 36
 "A RICO offense is not, in a literal sense, the 'same offense' as a [section 846 or 848 conspiracy]." United States v. Grayson, 795 F.2d 278, 283 (3rd Cir.1986), cert. denied, 479 U.S. 1054, 107 S.Ct. 927, 93 L.Ed.2d 978 (1987). Moreover, with the exception of Delores Bennett, appellants do not even argue that these offenses fail to pass the same elements test. A comparison of the RICO offenses alleged in the present indictment and the drug conspiracy charges in Bennett I reveals that these offenses have different statutory elements, and that each offense requires proof of a different element that the other does not. The substantive RICO and RICO conspiracy offenses require proof of the existence of an enterprise as defined by 18 U.S.C. Sec. 1961(4), and a "pattern of racketeering activity" encompassing certain acts of racketeering activity, both defined by section 1961. A RICO conspiracy offense requires proof of the additional element of an agreement to violate RICO. None of those elements need be proved for a section 846 or 848 conspiracy. Likewise, sections 846 and 848 both require an agreement to deal in narcotics. Section 848 requires additional elements involving a continuing series of substantive narcotics violations. None of those elements need be proved to establish a substantive RICO or RICO conspiracy offense.
 
 
 37
 Furthermore, "[a] RICO substantive charge is not a conspiracy and it is axiomatic that a substantive offense is distinct from a conspiracy to commit that or another substantive offense." Phillips, 664 F.2d at 1014; see also United States v. Halls, 40 F.3d 275, 277-78 (8th Cir.1994) (successive prosecution of a conspiracy and a substantive offense "do[es] not give rise to double jeopardy"); United States v. Muza, 788 F.2d 1309, 1312 (8th Cir.1986) ("the commission of a substantive offense and a conspiracy to commit that offense are two separate and distinct crimes").
 
 
 38
 An examination of the statutory elements of the prior drug conspiracies in Bennett I and the RICO offenses alleged in the current indictment reveals that these offenses are not the same. Accord Crosby, 20 F.3d at 485; Deshaw, 974 F.2d at 672; Smith, 574 F.2d at 310-11; United States v. Solano, 605 F.2d 1141, 1145 (9th Cir.1979), cert. denied, 444 U.S. 1020, 100 S.Ct. 677, 62 L.Ed.2d 652 (1980); cf. Dean, 647 F.2d at 785 n. 14 (holding that Travel Act violations, 18 U.S.C. Sec. 1952, and substantive RICO offense based on the Travel Act violations were not the same offenses).
 
 C.
 
 39
 We next address appellant Delores Bennett's lesser included offense claim. She argues that the conspiracy to distribute heroin offense for which she was charged in Bennett I is a lesser included offense of the RICO violations alleged in the present indictment and that this prosecution is therefore barred under the double jeopardy principles enunciated in Harris v. Oklahoma, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977); Brown v. Ohio, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); and Whalen v. United States, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980).
 
 
 40
 Appellants, including Delores Bennett, were previously charged in Bennett I with conspiracy to distribute and to possess with intent to distribute heroin from 1984 to 1989, in violation of 21 U.S.C. Secs. 841(a)(1), 846. They are all charged in the instant indictment with a substantive RICO violation and RICO conspiracy. Under both counts, Delores Bennett, Noble Bennett, and Dixon are charged with a common predicate act, namely, illegal investment of drug proceeds from 1986 to 1987, in violation of 21 U.S.C. Sec. 854. Among the predicate acts or violations in the indictment from which the government alleges appellants received the drug proceeds that were illegally invested under section 854, is conspiracy to distribute and to possess with intent to distribute various narcotic controlled substances from 1977 to 1983, in violation of 21 U.S.C. Secs. 841(a)(1), 846.
 
 
 41
 Delores Bennett makes essentially a three-part lesser included offense argument. First, she contends that the 1984-89 conspiracy for which she was charged in Bennett I is a predicate act of the section 854 violation alleged in the indictment, which, in turn, is alleged as a predicate act for both the substantive RICO and RICO conspiracy counts. In other words, Bennett claims that the prior conspiracy is a predicate act within a predicate act. Second, by focusing on the averments in the indictment, she argues that double jeopardy bars the successive prosecution of RICO offenses (the greater offenses) and their underlying predicate offenses (the lesser offenses) because the predicate crimes do not "require proof of a fact which the [RICO offenses] do[ ] not." See Blockburger, 284 U.S. at 304, 52 S.Ct. at 182. Third, she argues that double jeopardy also bars the successive prosecution of RICO offenses and any predicate crimes within a RICO predicate offense.
 
 
 42
 This argument falls under its own weight because of Bennett's erroneous reading of the indictment. The indictment does not specifically allege the 1984-89 conspiracy charged in Bennett I as a predicate offense. Rather, it alleges a new conspiracy: conspiracy to distribute and to possess with intent to distribute various narcotic controlled substances from 1977 to 1983, in violation of 21 U.S.C. Secs. 841(a)(1), 846. For Bennett's argument to have any merit, it must be interpreted as raising the question whether these two conspiracies are the same. Only if this question is answered in the affirmative can the Bennett I and II indictments be read as involving the successive prosecution of RICO and an underlying predicate offense or, as Bennett puts it, a predicate offense of a predicate offense.
 
 
 43
 The government is relying on the 1977-83 drug conspiracy to establish the RICO conspiracy violation in the present case. Therefore, resolving the double jeopardy issues raised by Delores Bennett depends on whether the prior section 846 conspiracy prosecuted in Bennett I is the same 846 conspiracy alleged as a predicate act in the current indictment. Because the indictments allege multiple violations of the same conspiracy statute, 21 U.S.C. Sec. 846, we apply the totality of the circumstances test to make that determination. Because none of the charges in Bennett I were tried, our decision must necessarily "be based on a comparison of the two indictments on their face, taking into account the government's representations as to its intended proof in the [Bennett II ] trial." Standefer, 948 F.2d at 431.
 
 
 44
 Turning to the totality of the circumstances test, we consider the following factors: (1) time; (2) persons acting as co-conspirators; (3) the statutory offense charged in the indictment; (4) the overt acts charged by the government or any other description of the offenses charged which indicate the nature and the scope of the activity which the government sought to punish in each case; and (5) places where the events alleged as part of the conspiracy took place. Thomas, 759 F.2d at 662.
 
 
 45
 On the face of the two indictments, and considering the government's representations as to its intended proof in Bennett II, there are some similarities between the two conspiracies: the statutory offenses alleged are the same, and all of the appellants are charged with both conspiracies. However, there are also important differences. First, the nature and scope of the two conspiracies are different. The 1984-89 conspiracy allegedly involved "black tar" heroin, was much larger--with some thirty-five members--and more sophisticated, and the primary source of supply for the heroin was in California. The 1977-83 conspiracy, on the other hand, allegedly dealt in a variety of drugs including cocaine and pentazocine and consisted of only four co-conspirators. The primary source of supply for this conspiracy was in Chicago. See, Standefer, 948 F.2d at 431 (relying on differences in nature and scope of activities); Kienzle, 896 F.2d at 329 (relying on differences in scope of activities and controlled substances).
 
 
 46
 Second, there is no overlap in time between the two conspiracies. Noble Bennett, the alleged leader of both conspiracies, was in prison from November 1982 until November 1983, and there is no evidence of any drug activity on his part during this period. Thus, this does not appear to be merely a "lull" in the same conspiracy, "but [indicates] a true break." United States v. McHan, 966 F.2d 134, 141 (4th Cir.1992); see also Okolie, 3 F.3d at 290 (noting that difference in time was indicative of a separate agreement). Consequently, on this record, we agree with the government that the 1977-83 conspiracy alleged in the present indictment is a separate and distinct offense from the 1984-89 conspiracy charged in Bennett I. As we have repeatedly pointed out, "it 'is possible to have two different conspiracies to commit exactly the same type of crime.' " Tanner, 860 F.2d at 867 (quoting Thomas, 759 F.2d at 666).
 
 
 47
 Accordingly, we conclude that even if predicate crimes constitute lesser included offenses of a RICO offense, appellants are not subject to double jeopardy by being charged with the 1977-83 conspiracy as a predicate offense in the instant indictment because they were never in jeopardy for that conspiracy. Cf. Stricklin, 591 F.2d at 1124 (explaining that because defendant had not been subjected to prior jeopardy for the predicate conspiracy offense, the inclusion of that conspiracy as part of a subsequent CCE prosecution did not constitute double jeopardy).
 
 
 48
 We recognize, however, that the period during which the predicate section 854 violation allegedly occurred (January 1986 to November 1987) is completely subsumed under the 1984-89 conspiracy prosecuted in Bennett I, and that this period is three years after the previously unprosecuted 1977-83 conspiracy alleged in the current indictment. Consequently, as Delores Bennett contends, it may be necessary for the government to rely on the prior 1984-89 conspiracy to which jeopardy has already attached, rather than the 1977-83 conspiracy, in order to establish the requisite violation under section 854. Indeed, the indictment alleges the 1977-1983 conspiracy as a separate RICO predicate act, and that separate allegation may preclude the government from also using it as a predicate act or violation under section 854. See Kragness, 830 F.2d at 861 ("it is not proper under RICO to charge two predicate acts where one action violates two statutes"). Nevertheless, there are other offenses alleged in the indictment (such as a substantive violation of 21 U.S.C. Sec. 841) that the government could conceivably use as a basis for the section 854 predicate violation. Accordingly, we need not decide at this pretrial stage whether double jeopardy forbids the successive prosecution of the RICO charge and its predicate acts based on the mere possibility that the government may rely on a previously prosecuted conspiracy that is not specifically alleged within the present indictment.
 
 D.
 
 49
 Gillespie also raises a multiple punishment claim. He argues that double jeopardy bars the prosecution of the RICO charges in the instant indictment because it will result in a second punishment for conduct previously punished as a result of his guilty plea in Bennett I to conspiracy to distribute heroin.
 
 
 50
 We disagree with Gillespie that the "whole" of his conduct alleged in the present indictment was considered by the district court in setting his sentence in Bennett I. Under the current indictment, Gillespie is charged with the predicate acts of murder and conspiracy to distribute various narcotic controlled substances from 1977 to 1983. Nowhere in the pre-sentence report provided to the district court in Bennett I is such conduct described. This fact alone is sufficient to defeat Gillespie's argument.
 
 
 51
 Second, even assuming that in setting Gillespie's sentence in Bennett I the district court considered some of the conduct that is charged within the current indictment, we find that Gillespie's argument "misconceives the focal point of the double jeopardy protection against a second punishment as the conduct considered in setting the [Bennett I ] sentence, instead of the conviction offense that prompted [that] sentence." United States v. Cruce, 21 F.3d 70, 75 (5th Cir.), cert. denied, --- U.S. ----, 115 S.Ct. 174, 130 L.Ed.2d 110 (1994). Moreover, we have previously held that "sentence enhancement on the basis of ... prior criminal conduct plus the eventual imposition of a sentence on that same criminal conduct does not violate double jeopardy principles." United States v. Williams, 935 F.2d 1531, 1539 (8th Cir.1991), cert. denied, 502 U.S. 1101, 112 S.Ct. 1189, 117 L.Ed.2d 431 (1992); see also United States v. Bolding, 972 F.2d 184, 185 (8th Cir.1992) (per curiam) (same). Accordingly, we reject Gillespie's argument that the RICO charges improperly subject him to multiple punishment.
 
 E.
 
 52
 We conclude that prosecution of the appellants for the RICO violations alleged in the current indictment will not violate appellants' rights under the Double Jeopardy Clause of the Fifth Amendment. In doing so, we do not lightly dismiss appellants' concern over the developments in Bennett I and II. Indeed, we recognize that they are correct in asserting that this is not a case where all the events necessary to the current prosecution extended beyond the time of the first prosecution and that this is not a case where the facts underlying the current prosecution were unknown or unavailable at the time of Bennett I. We further note that this is also not a case where appellants' actions contributed to a need for separate prosecutions.
 
 
 53
 Despite any concern that we may share with appellants regarding the turn of events presented by this case, such concern may not be transformed into a double jeopardy violation unless the offenses for which the appellants have previously been charged in Bennett I are the "same offenses" as those contained within the present indictment. United States v. Esposito, 912 F.2d 60, 63 (3rd Cir.1990), cert. dismissed, 498 U.S. 1075, 111 S.Ct. 806, 112 L.Ed.2d 1032 (1991). The fact that the same evidence may serve double duty in Bennett I and Bennett II is of no consequence. Rodgers, 18 F.3d at 1429 ("[t]here is no 'same-evidence' test to prohibit the government from using the same evidence to prove two different offenses"). On the contrary, in the light of Dixon, it is now clear once again that multiple prosecutions of distinct offenses are not prohibited simply because of their proximity or similarity. See Dixon, --- U.S. at ---- - ----, 113 S.Ct. at 2859-64; Rodgers, 18 F.3d at 1429. Because we hold that the offenses alleged in Bennett I and II are not the "same offenses," appellants' double jeopardy claims must fail.
 
 IV.
 
 54
 The district court's order denying appellants' motions to dismiss is affirmed, and the case is remanded to the district court for trial.
 
 
 
 [1]
 The Honorable Clyde S. Cahill, Senior United States District Judge for the Eastern District of Missouri
 
 
 [2]
 Prior to trial, Gillespie pled guilty to the conspiracy charge and was sentenced to a sixty-six month term of imprisonment. He challenges the current indictment based on his prior guilty plea
 
 
 [3]
 Sometime after the dismissal in Bennett I and the filing of the present action, Noble Bennett was convicted of a substantive RICO violation and acquitted of RICO conspiracy. Bennett's appeal of the RICO conviction is currently pending before this court. United States v. Bennett, No. 93-3456. Bennett argues that the prior RICO conviction and acquittal bar the present RICO indictment. We decline to address this issue, however, because it was not raised in the district court and is therefore not properly before us
 
 
 [4]
 The collateral estoppel strand of double jeopardy also prevents successive prosecutions when the second prosecution requires relitigation of factual issues resolved in the first. See Dixon, --- U.S. at ----, 113 S.Ct. at 2860. This collateral estoppel effect is not applicable here because the charges in Bennett I were dismissed
 
 
 [5]
 As will be discussed, appellants use the term "RICO conspiracy" as encompassing both the RICO conspiracy and substantive RICO charges
 
 
 [6]
 The district court did not address this argument. Instead, it considered only whether the prior CCE charges were the same as the RICO charges. This inquiry had no relevance to the claims of Gillespie or Delores Bennett because they were not charged in Bennett I with CCE. Similarly, the government focuses on, inter alia, whether the section 846 conspiracy charged in Bennett I is the same 846 conspiracy alleged as a predicate act in the instant indictment. The issues addressed by the district court and the government, however, are separate from appellants' "same conspiracy-same offense" argument--i.e., if the prior conspiracy charges and the current RICO charges are parts of the same conspiracy, they constitute the same offense. This argument raises the threshold issue of which same offense test is appropriate where 1) the defendants are involved in a single long-term conspiracy, and 2) the defendants are charged under successive indictments for a violation of separate and distinct conspiracy statutes
 
 
 [7]
 We recognize that Albernaz and some of the other cases referred to involved multiple punishment rather than multiple trials. Our "same offense" analysis, however, is unaffected by whether this case involves multiple punishment or successive prosecution. It is well settled that "[i]f two offenses are the same under th[e] [Blockburger ] test for purposes of barring consecutive sentences at a single trial, they necessarily will be the same for purposes of barring successive prosecutions." Brown v. Ohio, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977); see also Dixon, --- U.S. at ----, 113 S.Ct. at 2860. Likewise, the opposite must also be true: if two offenses are not the same for purposes of barring multiple punishment, they necessarily will not be the same for purposes of barring successive prosecutions. This is so "because it is embarrassing to assert that the single term 'same offence' ... has two different meanings--that what is [not] the same offense is yet ... the same offense." Dixon, --- U.S. at ----, 113 S.Ct. at 2860
 
 
 [8]
 The Supreme Court has overruled the "same conduct" test of Grady v. Corbin, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990). See Dixon, --- U.S. at ----, 113 S.Ct. at 2860. The same conduct test provided that if "the government, to establish an essential element of an offense charged in [a second] prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted," then the second prosecution is barred. Grady, 495 U.S. at 521, 110 S.Ct. at 2093. However, in Dixon, the Court "now has returned to the same-elements test as the sole standard by which to determine whether there has been a double jeopardy violation." Rodgers, 18 F.3d at 1428 (citing Dixon, --- U.S. at ---- - ----, 113 S.Ct. at 2859-64)