IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. AP-76,547






EX PARTE JESSE CHADDOCK, Applicant








ON APPLICATION FOR WRIT OF HABEAS CORPUS


CAUSE NO. W04-01705-K(A) IN THE CRIMINAL DISTRICT COURT 


NO. 4 FROM DALLAS COUNTY





 Keasler, J., delivered a dissenting opinion, in which Hervey, J., joined.


 The Court concludes that engaging in organized criminal activity and the predicate
offense are the "same offense" when each offense is separately prosecuted. And upon
conviction of the former, double jeopardy bars prosecution of the latter. But when the two
offenses are tried together, double jeopardy is not offended. I disagree with the logical
inconsistency that results from defining "same offense" by virtue of the double-jeopardy
claim's context. 

 The Double Jeopardy Clause provides that no "person [shall] be subject for the same
offence to be twice put in jeopardy of life or limb." (1) "This protection applies both to
successive punishments and to successive prosecutions for the same criminal offense." (2) 
Specifically, the United States Supreme Court outlined--and we have recognized--three
distinct double-jeopardy claims: (1) a second prosecution for the same offense after acquittal;
(2) a second prosecution for the same offense after conviction; and (3) multiple punishments
for the same offense. (3) "[A] threshold question in [each] case is whether the defendant is
being punished or prosecuted for the 'same offense.'" (4)

 Determining whether two offenses are the same offense requires examining legislative
intent. The Supreme Court has held that, for all double-jeopardy claims, the test articulated
in Blockburger v. United States is a tool for ascertaining whether a legislature intended two
separately prescribed offenses to be the same offense. (5) "The assumption underlying the
Blockburger [test] is that Congress ordinarily does not intend to punish the same offense
under two different statutes." (6) We also have recognized that "the Blockburger test is . . .
useful in determining legislative intent as to the scope of punishment where the intent is not
otherwise manifested, and does not operate to trump clearly expressed legislative intent." (7)

 In Garza v. State, a multiple-punishment case, we relied upon these principles in
holding that two offenses--engaging in organized criminal activity and the underlying
offense (capital murder in that case)--were not the same offense for double-jeopardy
purposes. (8) While admitting that the two offenses would have been the same under the
Blockburger test, we considered Penal Code Section 71.03(3)'s provision that "[i]t is no
defense to prosecution [for engaging in organized criminal activity] that a person has been
charged with, acquitted, or convicted of any [underlying] offense." (9) We reasoned that "the
Legislature . . . indicated with sufficient clarity its intention that a defendant charged with
engaging in organized criminal activity may also be charged (at least in the same proceeding)
with the underlying offense and punished for both." (10)

 Chaddock acknowledges--and does not challenge--our holding in Garza; his sole
argument is that engaging in organized criminal activity and the underlying offense are the
same offense in the successive-prosecution context because the underlying offense is a
lesser-included offense. This characterization alone is dispositive in the majority's view. 
I disagree. 

 In United States v. Dixon, the Supreme Court held that the term "same offense" has
the same meaning in both the multiple-punishment and successive-prosecution contexts. (11) 
In overruling Grady v. Corbin, (12) the Dixon majority discarded the same-conduct test because
it necessitated defining "same offense" differently in the multiple-punishment and
successive-prosecution contexts. (13) In reaching this conclusion, the Court affirmatively
rejected the notion that the Double Jeopardy Clause's prevention of successive prosecution
and punishment results in two distinct strands entitled to a different meaning in each
context. (14) And it did so unequivocally: "That is perhaps because it is embarrassing to assert
that the single term 'same offence' . . . has two different meanings--that what is the same
offense is yet not the same offense." (15) Thus, Dixon demands that the test for what constitutes
the same offense be the same in both contexts. (16) As a result, the now-singular analysis that
emerged after Dixon is the same test the Supreme Court used in Missouri v. Hunter (17) in the
multiple-punishment context; specifically, that while courts presume, under Blockburger, that
the legislature did not intend to permit successive prosecution or multiple punishment under
two offenses that lack distinct elements, this rebuttable presumption is overcome by clear
evidence of legislative intent that both offenses apply. (18) While it is true, as the majority
notes, that Dixon did not affirmatively adopt the Hunter approach, it is reasonable to assume
that when the Court merged the analyses, the Court was familiar with its own double-jeopardy jurisprudence in the multiple-punishment context. And Hunter continues to be
good law today.

 Professor LaFave has also recognized Dixon's adoption of legislative deference in its
determination of whether offenses are the same. (19) In his treatise, he addressed the Supreme
Court's decision in Harris v. Oklahoma, (20) a factually similar double-jeopardy case upon
which Chaddock relies, in which the Court held that "[w]hen . . . conviction of a greater
crime . . . cannot be had without conviction of a lesser crime . . . the Double Jeopardy Clause
bars prosecution for the lesser crime after conviction of the greater one." Like Chaddock,
Harris was charged with and convicted of one offense (committing murder in the course of
a robbery with firearms) and then, in a separate proceeding, was charged with and convicted
of the lesser-included offense (robbery with firearms). (21) Reading Dixon literally--as I
suggest we must--Professor LaFave opined that "if . . . the Dixon decision really means that
the two strands of the double jeopardy clause must be given precisely the same meaning, then
the actual holding in Harris would likewise be open to circumvention by such legislative
action." (22) 

 Ultimately, we held in Garza that, in the multiple-punishment context, engaging in
organized criminal activity and the underlying offense are not the same offense. (23) In
accordance with Hunter, we reasoned that Section 71.03(3)'s enactment trumped the
Blockburger test. (24) If two offenses are not the same offense in the multiple-punishment
context, then they should not be considered the same offense in the successive-prosecution
context. (25)

 In her concurring opinion, Presiding Judge Keller takes issue with my reading of
Dixon because, as she asserts, it would allow "the legislature [to] abrogate the double-jeopardy protection against successive prosecutions" by creating multiple offenses with the
same elements and could render acquittals meaningless, undermining the concepts of claim
and issue preclusion. (26) Presiding Judge Keller's claims mirror those made by Justice Souter
in his dissent in Dixon (joined only by Justice Stevens), which were rejected by the majority. 
Justice Souter argued that

 by defining its offenses with care, the government could not merely add
punishment to punishment (within Eighth and Fourteenth Amendment limits),
but could bring a person to trial again and again for that same conduct, . . . . 
The protection of the Double Jeopardy Clause against successive prosecutions
is not so fragile that it can be avoided by finely drafted statutes and carefully
planned prosecutions. (27)


The collateral estoppel doctrine defined in Ashe v. Swenson (28) would still bar relitigating the
same factual allegations when previously rejected by a fact-finder. (29) 

 Presiding Judge Keller's opinion also seems to suggest Dixon's language should be
viewed skeptically in light of Justice Scalia's subsequent thoughts on the Double Jeopardy
Clause. Her opinion notes Justice Scalia's dissent in Dep't of Revenue v. Kurth Ranch (30)
where he adopts the position that, in multiple-punishment cases, double-jeopardy claims are
more appropriately addressed under the Due Process Clause. However meritorious his
personal view may be, it has never been adopted by the Supreme Court and should have no
bearing on our interpretation of Dixon. 

 Judge Cochran, in her concurrence, also suggests that labeling the aggravated assault
as a lesser-included offense of engaging in organized criminal activity should end the 
double-jeopardy analysis. She takes issue with my reading of Dixon in light of the Supreme
Court's holding in Rutledge v. United States, in which the Court held that the offense of
participating in a conspiracy to distribute controlled substances was a lesser-included offense
of conducting a continuing criminal enterprise; therefore the convictions for both offenses
violated double jeopardy. (31) Rutledge is inapplicable to the present case. First, Rutledge
presented the Court with a multiple-punishment double-jeopardy question because Rutledge
was tried and convicted for both offenses in a single proceeding. (32) So Rutledge's conclusion
neither confirms nor disproves my reading of Dixon. Second, even if Rutledge had
instructive value here, its message is consistent with the conclusion that a court should
consider legislative intent once it finds the offenses appear to be the same based on their
elements. (33) 

 Finally, the Court has, as a practical result, created a de facto mandatory-joinder rule. 
The Legislature intended that a defendant may be punished for both engaging in organized
criminal activity and the underlying predicate offense. (34) And to give effect to the full
punishment envisioned by the Legislature for both engaging in organized criminal activity
and the predicate offense, the State is now forced to prosecute both offenses in a single
proceeding. There is no constitutional support for such a forced-joinder rule. 

 I cannot join the Court's opinion because it results in logical inconsistency in the
meaning of the Double Jeopardy's "same offense" language: "that what is the same offense
is yet not the same offense." (35) 


DATE DELIVERED: June 27, 2012

PUBLISH
1. U.S. Const. amend. IV; accord Missouri v. Hunter, 459 U.S. 359, 362 (1983).
2. United States v. Dixon, 509 U.S. 688, 696 (1993) (citing North Carolina v. Pearce,
395 U.S. 711, 717 (1969)). 
3. See id.; Weinn v. State, 326 S.W.3d 189, 192 (Tex. Crim. App. 2010). 
4. State v. Perez, 947 S.W.2d 268, 270 (Tex. Crim. App. 1997).
5. 284 U.S. 299 (1932); accord Albernaz v. United States, 450 U.S. 333, 337-38,
340-42 (1981) (multiple punishments); Brown v. Ohio, 432 U.S. 161, 166 & n.6 (1977)
(successive prosecutions).
6. Ball v. United States, 470 U.S. 856, 861 (1985).
7. Weinn, 326 S.W.3d at 192 (internal quotes omitted).
8. 213 S.W.3d 338, 351-52 (Tex. Crim. App. 2007). 
9. Tex. Penal Code § 71.03(3); accord Garza, 213 S.W.3d at 352.
10. Garza, 213 S.W.3d at 352.
11. Dixon, 509 U.S. at 704. 
12. 495 U.S. 508 (1990).
13. Dixon, 509 U.S. at 704.
14. Id.
15. Id. (emphasis in original).
16. Id.; accord United States v. Bennett, 44 F.3d 1364, 1372 n.7 (8th Cir. 1995)
(quoting Brown, 432 U.S. at 165, for the proposition that "if two offenses are the same under
the [Blockburger] test for purposes of barring consecutive sentences at a single trial, they
necessarily will be the same for purposes of barring successive prosecutions," and citing
Dixon to deduce the converse proposition that "if two offenses are not the same for purposes
of barring multiple punishment, they necessarily will not be the same for purposes of barring
successive prosecutions").
17. 459 U.S. at 368-69. 
18. Bennett, 44 F.3d at 1372 n.7; accord State v. Flenoy, 968 S.W.2d 141, 144-45 (Mo.
1998); State v. Weaver, 648 N.W.2d 355, 358-61(S.D. 2002). See Dixon, 509 U.S. at 704.
19. See 5 Wayne R. LaFave, et al., Criminal Procedure § 17.4(b), at 86 (3d ed.
2007); see generally Nancy J. King, Proportioning Punishment: Constitutional Limits on
Successive and Excessive Penalties, 144 U. Pa. L. Rev. 101 (1995).
20. 433 U.S. 682 (1977).
21. Id.
22. 5 Criminal Procedure § 17.4(b), at 86.
23. Garza, 213 S.W.3d at 351-52. 
24. Id.
25. Dixon, 509 U.S. at 704; Bennett, 44 F.3d at 1372 n.7. 
26. Ante, at 1-2 (Keller, P.J., concurring).
27. Dixon, 509 U.S. at 760-61 (Souter, J., dissenting).
28. 397 U.S. 436 (1970).
29. See Dixon, 509 U.S. at 710 n.15.
30. 511 U.S. 767, 802-803 (Scalia, J., dissenting).
31. Rutledge v. United States, 517 U.S. 292, 300, 307 (1996).
32. Id. at 295.
33. See id. at 303-304 & n.14 (rejecting the government's argument that Congress
intended multiple punishment for both offenses).
34. Garza, 213 S.W.3d at 351-52.
35. Dixon, 509 U.S. at 704.