UNITED STATES of America, Appellee,

v.

Samuel Lee PETTY, Appellant.

No. 94–1765.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 15, 1994.

Decided Aug. 10, 1995.

Donald V. Morano, Chicago, IL, argued, for appellant.

Dean R. Hoag, Asst. U.S. Atty., St. Louis, MO, argued, for appellee.

Before RICHARD S. ARNOLD, Chief Judge, REAVLEY,* Senior Circuit Judge, and McMILLIAN, Circuit Judge.

McMILLIAN, Circuit Judge.

In this interlocutory appeal, Samuel Lee Petty challenges the district court's[1] denial of his motion to dismiss the indictment for conspiracy to possess and distribute narcotics on Double Jeopardy grounds. Petty contends that the present indictment alleges the same conspiracy for which he was already found not guilty by a jury in *United States v. Lewis–Bey*, No. 91–1CR(6) (E.D.Mo. June 15, 1993) (*Lewis–Bey* case). The question before this court is whether the conspiracies charged in each indictment are one and the same. For the reasons set forth below, we affirm the district court's denial of the motion to dismiss the indictment.

## I. BACKGROUND

In September 1991, a federal grand jury indicted Petty and fourteen other defendants in the *Lewis–Bey* case. Petty was named in three counts of an eleven-count indictment. Count I charged Petty with participating in a racketeering enterprise in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), in violation of 18 U.S.C. § 1962(c).[2] Count II charged Petty with a conspiracy, spanning from April 1978 to September 1992, to violate RICO in violation of 18 U.S.C. § 1962(d). Count XI charged Petty with conspiracy to commit murder. In Count I, Petty was specifically charged with four predicate acts, only two of which are at issue in this appeal. Racketeering predicate act 13(a) alleged that Petty participated in a conspiracy to distribute cocaine, heroin, marijuana, and pentazocine from April 1978 to September 1992, in violation of 21 U.S.C. §§ 841 and 846. Racketeering predicate act 13(d) alleged that Petty distributed heroin between March 1988 and July 1988.[3] Petty was acquitted by a jury on all charges. In a special interrogatory the jury found that the government had not proven that Petty committed racketeering predicate act 13(a) but had proven that he committed racketeering predicate act 13(d).

After the acquittal in the *Lewis–Bey* case, a federal grand jury returned a one-count indictment against Petty and Leslie Sanchez McClelland. *United States v. Petty*, No. 4:93CR00177, (E.D.Mo.1993) (*Petty–McClelland* case). The indictment alleged that Petty, McClelland, and others conspired to possess and distribute heroin, in violation of 21 U.S.C. §§ 846 and 841(a)(1), from 1987 through February 1990. The government concedes that the *Petty–McCleland* indictment is based upon the same transactions that supported racketeering predicate act 13(d) charged in Count II of the *Lewis–Bey* indictment.

Petty moved to dismiss the indictment arguing that the conspiracy to distribute heroin charged in the *Petty–McClelland* case is the same conspiracy of which he was found not guilty in the *Lewis–Bey* case and therefore the *Petty–McClelland* indictment is barred by the Double Jeopardy Clause. The motion to dismiss was initially considered by a United States magistrate judge pursuant to an order of the district court referring all pretrial matters for appropriate disposition under 28 U.S.C. § 636(b). In the report and recommendation the magistrate judge recommended that Petty's motion to dismiss be denied; the magistrate judge construed Petty's claim to argue that "double jeopardy is

---

* The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

1. The Honorable Jean C. Hamilton, Chief Judge, United States District Court for the Eastern District of Missouri.

2. Under RICO, it is unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). A "pattern of racketeering" requires at least two acts of racketeering activity in a ten-year period. *Id.* § 1961(5). "Racketeering activity" is defined as activity that violates specified state laws or federal statutes. *Id.* § 1961(1).

3. Racketeering predicate act 13(d) was divided into two subparts. Subpart (i) alleged a violation of state law, Mo.Rev.Stat. §§ 195.020 and 562.041 (1986) and subpart (ii) alleged a violation of federal law, 21 U.S.C. § 841.

violated whenever the government first brings a RICO charge and then subsequently prosecutes the defendant for an offense which was charged as a predicate act in [a prior] RICO case." *Report & Recommendation* at 8.[4] The district court accepted and adopted the magistrate's recommendation and denied the motion to dismiss. This appeal followed.

## II. DISCUSSION

For reversal, Petty argues that the district court erred in denying his motion to dismiss on double jeopardy grounds because the wrong legal standard was applied to his double jeopardy claim.

■ The Double Jeopardy Clause states: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Double Jeopardy Clause has three guarantees: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishment for the same offense." *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). The Double Jeopardy Clause also prohibits subdivision of a single conspiracy into multiple violations. *Braverman v. United States,* 317 U.S. 49, 52–53, 63 S.Ct. 99, 101–02, 87 L.Ed. 23 (1942). To claim benefit of one of the guarantees, "a defendant must show that the two offenses charged are in law and fact the same offense." *United States v. Okolie,* 3 F.3d 287, 289 (8th Cir.1993) *cert. denied,* —— U.S. ——, 114 S.Ct. 1203, 127 L.Ed.2d 551 (1994) (citing *United States v. Benefield,* 874 F.2d 1503, 1505 (11th Cir.1989)). We review a district court's denial of a motion to dismiss an indictment on double jeopardy grounds *de novo. United States v. Ivory,* 29 F.3d 1307, 1310 (8th Cir.1994).

■ Petty contends that the government is attempting to twice prosecute him for a single, long-term, narcotics conspiracy. He argues that the conspiracy charged in the *Petty–McClelland* indictment is a subdivision of the conspiracy charged in the *Lewis–Bey* indictment. This Court has adopted the "totality of the circumstances" analysis to determine whether single or multiple conspiracies exist. *United States v. Thomas,* 759 F.2d 659, 662 (8th Cir.1985); *see also United States v. Tercero,* 580 F.2d 312, 315 (8th Cir.1978). The "test ... is whether the totality of the circumstances demonstrates that the two alleged conspiracies are in reality the same conspiracy." *Tercero,* 580 F.2d at 315. Under this test, the court considers the following five factors: (1) the time the conspiracies existed; (2) the identity of the conspirators involved; (3) the statutory offenses charged in the indictment; (4) the nature and scope of the activity charged; and (5) the location where the events alleged as part of the conspiracy took place. *Thomas,* 759 F.2d at 662; *see also United States v. Ledon,* 49 F.3d 457, 460 (8th Cir.1995); *United States v. Okolie,* 3 F.3d at 290; *United States v. Standefer,* 948 F.2d 426, 431 (8th Cir.1991).

■ We first consider the time period during which the conspiracies existed. The *Lewis–Bey* conspiracy began in April 1978 and continued until September 1992. The *Petty–McClelland* conspiracy allegedly began in 1987 and ended in February 1990. While there is a substantial overlap in the time period during which the conspiracies allegedly existed, the *Lewis–Bey* conspiracy both predated and continued beyond the ending date of the *Petty–McClelland* conspiracy. *See United States v. Kienzle,* 896 F.2d 326, 329 (8th Cir.1990) (distinct conspiracies where time overlapped but did not coincide).

Second, the identity of the alleged conspirators requires examination. The *Lewis–Bey* conspiracy identified fourteen persons as co-conspirators with Petty, while the *Petty–McClelland* conspiracy identified only two co-

---

4. The magistrate judge misunderstood the thrust of Petty's argument to state that the conspiracy to distribute heroin from March 1988 to July 1988 listed as predicate act 13(d) in the *Lewis–Bey* case, which the jury found the government had proven, was the basis of his double jeopardy claim. On appeal, Petty clarified his double jeopardy argument in his brief and during oral argument. He made it clear that the grounds for his double jeopardy claim is that the *Petty–McClelland* indictment alleges the same conspiracy alleged in the *Lewis–Bey* indictment as predicate act 13(a), of which a jury found him not guilty.

conspirators, Petty and McClelland; McClelland was not charged in the *Lewis–Bey* indictment. Therefore, with the exception of Petty, the persons identified in each conspiracy are different.

Third, we review the statutory offenses charged. Although both indictments charge drug-trafficking conspiracies in violation of 21 U.S.C. §§ 841 and 846, different controlled substances were named. The *Lewis–Bey* conspiracy involved distribution of cocaine, heroin, marijuana, and pentazocine. The *Petty–McClelland* conspiracy involved distribution of heroin only. While the heroin is common to both indictments, it has no significance. We have held that, "it is possible to have two different conspiracies to commit exactly the same type of crime." *United States v. Tanner*, 860 F.2d 864, 867 (8th Cir.1988) (finding two distinct conspiracies rather than a single overall agreement after comparing a Missouri indictment alleging a conspiracy to distribute heroin and cocaine between April 1985 and January 1986 to a California indictment alleging a conspiracy to knowingly possess and distribute heroin during a two-day period in 1986, both in violation of 21 U.S.C. § 841(a)(1)) (quoting *Thomas*, 759 F.2d at 666).

The fourth factor to consider is the nature and scope of the activities charged. The *Petty–McClelland* indictment alleged a conspiracy over a four-year period to import heroin from Hong Kong for distribution in St. Louis. Allegedly, Petty conducted this activity over public telephones while he was incarcerated and solicited the assistance of his wife and several friends, to assist him in importing and distributing the heroin.[5] The *Lewis–Bey* indictment alleged a conspiratorial affiliation with eight others spanning over a fourteen-year period to distribute various narcotics in St. Louis. Therefore, the nature and scope of the activities of each conspiracy differ substantially.

The final factor to consider is location. The distribution activity in both conspiracies primarily occurred in St. Louis. However, the *Petty–McClelland* conspiracy allegedly involved importing heroin from Hong Kong.

### III. CONCLUSION

Thorough examination of the above five factors leads us to conclude that, under the totality of the circumstances, the two conspiracies are separate and distinct in law and fact. Accordingly, we hold that the *Petty–McClelland* indictment did not charge Petty with the same conspiracy charged as a predicate act in the *Lewis–Bey* indictment and therefore his right to be free from double jeopardy has not been violated.

Accordingly, we affirm, on different grounds as discussed herein, the order of the district court denying Petty's motion to dismiss the indictment on double jeopardy grounds.

---

5. These facts do not appear in the *Petty–McClelland* indictment, but were gleaned from the documents submitted in the joint appendix. In the joint appendix, Petty submitted grand jury testimony of Debra Randle, Petty's ex-wife, and Mark Garrand, and an affidavit in support of a search warrant of the home of one of Petty's alleged unnamed co-conspirators. Viewed together, these documents describe Petty's alleged heroin importing and distributing activities. Randle's testimony reveals that the Lewis–Bey enterprise was connected to Petty's heroin distribution activities only to the extent that he supplied heroin to one or two *Lewis–Bey* affiliates. This supports our conclusion that the conspiracies are different. The conspiracy to distribute heroin alleged in the instant indictment appear to be based on Petty's conduct to serve his own purposes rather than those of the *Lewis–Bey* enterprise.