UNITED STATES of America, Plaintiff,

v.

Jimmie C. JOHNSON, Defendant.

Nos. 4:97CR3002, 4:CR96–3023.

United States District Court,
D. Nebraska.

July 31, 1997.

John C. Vanderslice, Federal Public Defender's Office, Lincoln, NE, for Jimmie C. Johnson.

Richard E. Rothrock, Asst. U.S. Atty., Lincoln, NE, for U.S.

## MEMORANDUM AND ORDER

KOPF, District Judge.

This matter is before the court on the Magistrate Judge's Report and Recommendation (filing 50) and the objection to such Report and Recommendation (filing 55) filed as allowed by 28 U.S.C. § 636(b)(1)(C) and NELR 72.4.

I have conducted, pursuant to 28 U.S.C. § 636(b)(1) and NELR 72.4, a de novo review of the portions of the Report and Recommendation to which objection has been made. I find Defendant's motion to dismiss and motion in limine should be denied.[1]

IT IS ORDERED:

1. the Magistrate Judge's Report and Recommendation (filing 50) is adopted;

2. Defendant's objections (filing 50) are overruled; and

3. Defendant's motion in limits (filing 14) and motion to dismiss the indictment (filing 15) are denied.

## MEMORANDUM, ORDER, AND RECOMMENDATION

PIESTER, United States Magistrate Judge.

Pending before the court are the following motions: (1) defendant's motion to dismiss his indictment as violating the constitutional prohibition against double jeopardy and an accompanying motion in limine to exclude evidence related to an earlier drug conviction, (filing 14); (2) defendant's motion to dismiss his indictment as constituting a "vindictive prosecution," (filing 15); and (3) defendant's motion to compel information not disclosed in the government's response to an order for bill of particulars, (filing 46). For the reasons stated below, I shall deny the motion to compel and recommend denial of the motions to dismiss.

## BACKGROUND

In late 1994 state law enforcement officials began investigating an illegal drug conspiracy among several persons, including Defendant Jimmie C. Johnson. The investigation progressed to the point where on April 10, 1995 Nebraska law enforcement officers executed a state search warrant for defendant's residence located at 303 S. 26th Street, # 4, Lincoln, Nebraska, where approximately 2.1 grams of cocaine, 12.6 grams of marijuana, and $3,119 in cash were seized. As a result of that search, defendant was arrested, charged in the District Court of Lancaster County, Nebraska with possession with intent to distribute a controlled substance, and ultimately pleaded guilty on October 12, 1995 to a lesser charge, possession of a controlled substance, which is a Class IV felony under Nebraska law. (*State v. Johnson*, Doc. 50 Page 151.) As a result of the plea, the state agreed not to bring additional charges related to that "investigation." Lancaster County District Court Judge Bernard McGinn sentenced defendant to a term of two to four years imprisonment, and defendant then appealed that sentence and was released from incarceration pending that appeal. Deputy Lancaster County Attorney James Rocke handled the prosecution and plea bargain.

According to the Government, defendant's illegal activities did not end with his state conviction. Between October 13, 1995 and May of 1996 Defendant and his brother, Jerry Johnson, used various friends, including

---

1. I do· not agree with Magistrate Judge Piester's finding that "[a]lthough defendant was convicted in state court only of simple possession of an illegal substance, conspiracy clearly was among those charges the state bargained away as part of the plea." (Filing 50 at 7). Rather, I believe the evidence supports the conclusion that the state plea was not intended to preclude a conspiracy charge, particularly for acts occurring after the date of the plea agreement.

Heather Roberts, Laurie Howard, Stacie Horn, and Albert "Lucky" Williams, to sell hundreds of grams of crack cocaine. (Filing 35 at 3.) When the buyers could not pay in cash, defendant would authorize payment through stolen televisions and car parts. In addition, on April 13, 1996, defendant and his brother sexually and physically assaulted Laurie Howard when she could not pay off her drug debt, and they physically assaulted two men, Odell Reed and Percy Webster, in December 1995 and January 1996, when they could not pay off their drug debts. Further, from approximately Thanksgiving 1995 to February 1996, defendant "cooked" and sold crack cocaine in his Lincoln residence, sometimes with the help of an alleged coconspirator Tony Rutherford. Apparently, the Government learned much of this information when Rutherford made a deal with the Government.

A federal grand jury indictment of defendant was filed in this court on May 23, 1996, on one count of conspiracy to possess with intent to distribute cocaine base (crack cocaine), in violation of 21 U.S.C. § 841(a)(1). (*United States v. Johnson*, 4:CR96–3023) That indictment alleged that the conspiracy began in January 1995 and continued until at least May 23, 1996. The Government then obtained a superseding indictment alleging that the conspiracy began two months earlier in November of 1994. (*Id.*) In response to the indictments defendant filed several pretrial motions in the 4:CR96–3023 case, which, among other things, claimed that his constitutional right to be protected from double jeopardy had been violated.

As a result of defendant's double jeopardy claim, the U.S. Attorney's office, over defendant's objection, sought to dismiss the original federal case, and U.S. District Judge Richard G. Kopf approved the dismissal. (Memorandum and Order dated March 17, 1997.) The government then sought and obtained a new indictment charging defendant

with conspiring to possess with intent to distribute cocaine base, from October 13, 1995 until at least May 23, 1996. That indictment which forms the basis for this case, involves the "same" conspiracy as the earlier case; however, in an attempt to avoid double jeopardy problems, the indictment does not charge defendant with participating in the conspiracy before the date of his state conviction. Special Assistant United States Attorney Richard E. Rothrock, who also serves as a Deputy Lancaster County Attorney, is prosecuting this case for the U.S. Government.

### (1) DOUBLE JEOPARDY

■ The Fifth Amendment to the United States Constitution provides in part, "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const., Amend. V. Thus, the Double Jeopardy Clause prevents criminal prosecution of the same defendant by the same sovereign for the same offense. It has long been established, however, that two separate sovereigns, such as the federal government and a state government, may prosecute an individual "for the same act if that act violates the laws of each." *United States v. Paiz*, 905 F.2d 1014, 1023 (7th Cir.1990), *cert. denied*, 499 U.S. 924, 111 S.Ct. 1319, 113 L.Ed.2d 252 (1991). The dual-sovereignty doctrine is based on the common-law view of crime as an offense against the sovereignty of government. *Heath v. Alabama*, 474 U.S. 82, 88, 106 S.Ct. 433, 437, 88 L.Ed.2d 387 (1985). "When the defendant, in a single act violates the 'peace and dignity' of the sovereigns by breaking the laws of each, he has committed two distinct 'offenses.'" *Id.*

A potential exception to the duel-sovereignty rule, alluded to in a 1954 Supreme Court case, *Bartkus v. Illinois*, 359 U.S. 121, 123–24, 79 S.Ct. 676, 678–79, 3 L.Ed.2d 684 (1954),[1] may exist, however. It is this poten-

---

1. Because *Bartkus* largely dealt with whether the Fifth Amendment should be applied to the states, Justice Frankfurter's comment that Bartkus' state prosecution was not "a sham and a cover for a federal prosecution" has often been characterized as dicta. *See, e. g., Paiz*, 905 F.2d at 1024 n. 13; *United States v. Patterson*, 809 F.2d 244, 247 n. 2 (5th Cir.1987). Furthermore, although he did not elaborate at length, Judge Bowman

recently noted that *Bartkus* dealt with a state conviction following a federal prosecution, rather than a federal prosecution following a state conviction, which may also serve as cause for distinguishing *Bartkus*. *United States v. Basile*, 109 F.3d 1304, 1307 (8th Cir.1997). Because in any event defendant is not entitled to prevail on his claim, I shall assume for the sake of argument that the *Bartkus* exception exists.

tial exception to dual sovereignty that defendant seeks to exploit. The exception has been described thus: "when sovereign A's prosecution serves merely as a 'cover and tool' for sovereign B such that sovereign A's prosecution can rightly be called that of sovereign A, the prosecution brought by sovereign. A is barred if it would be barred to sovereign B." *Paiz*, 905 F.2d at 1024. If the prosecution by the second sovereign is merely a "sham" for a reprosecution by the first sovereign, it may be that dual sovereignty has been destroyed and a violation of double jeopardy results. *Id.* Only one court, however, in an unappealed case, has ever found a defendant to have met the "sham exception." *United States v. Belcher*, 762 F.Supp. 666 (W.D.Va.1991). Thus, the Seventh Circuit has noted the exception, "if it exists at all, is a narrow one, an extremely narrow one." *Paiz*, 905 at 1024.

· In this case defendant argues that his prosecution in federal court is a "sham and cover" for a second state prosecution and that Mr. Rothrock's dual role as both a Special Assistant United States Attorney and a Deputy Lancaster County Attorney has resulted in a "unitary form of government" or a "supersovereign." Thus, he contends this prosecution is prohibited by the Fifth Amendment and violates his plea agreement. On· the other hand, the Government argues that (a) defendant has not been prosecuted twice for the same offense and (b) Mr. Rothrock's service prosecuting federal cases does not bring defendant's prosecution within the *Bartkus* exception.

### (a) Severing the conspiracy

■ ██ The Government contends that double jeopardy has not been violated because even the State of Nebraska would not be prohibited from prosecuting defendant under these circumstances. In the state case defendant pleaded guilty to possession of crack cocaine in exchange for assurances that he would not be charged with any other crimes as a result of that "investigation." Based on police testimony that the investigation of defendant was still continuing at least up to the time of the federal indictment, defendant ar-

gues, rather fantastically, that the state plea absolves him from being charged with any crime discovered· pursuant to the investigation, even if committed *after* his conviction.[2] On the other hand, the Government argues that a charge of conspiracy to distribute cocaine does not meet the "same elements" test of *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), because the indictment is limited to defendant's alleged criminal activity after the state plea. Both positions are incorrect.

██ It has long been established that the Double Jeopardy Clause prohibits subdivision of a single conspiracy into multiple violations of the same statute. *Braverman v. United States*, 317 U.S. 49, 52–53, 63 S.Ct. 99, 101–02, 87 L.Ed. 23 (1942). The agreement itself is the prohibited conduct; if there is but one agreement, there is but one offense. *Id.* at 54, 63 S.Ct. at 102. Because a prosecutor might use different overt acts to bring separate prosecutions against the same person for the same conspiracy, the "same elements" test of *Blockburger* is not applicable to conspiracies. *United States v. Petty*, 62 F.3d 265, 267 (8th Cir.1995). Rather, the court must apply a "totality of the circumstances" test that focuses on five factors: "the time the conspiracies existed; (2) the identity of the conspirators involved; (3) the statutory offenses charged in the indictment; (4) the nature and scope of the activity charged; and (5) the location where the events alleged as part of the conspiracy took place." *United States v. Bennett*, 44 F.3d 1364, 1369 (8th Cir.1995), *cert. denied*, 515 U.S. 1123, 115 S.Ct. 2279, 132 L.Ed.2d 282 (1995). "[T]he ultimate question is whether a series of events comprises one conspiracy or two." *United States v. Standefer*, 948 F.2d 426, 431 (8th Cir.1991).

In this case it appears that if the Government's allegations are taken as true, after his state conviction defendant simply continued to act in accordance with the same conspiracy that he engaged in before his state conviction. (*See* filing 35.) The same players were

---

**2.** · I find it highly dubious that the state agreed to give defendant *carte blanc* to commit any drug-related crimes in the future that he saw fit, and I find it just as unlikely that at the time of his plea

defendant would have understood his plea as doing so. Such conclusions are objectively unreasonable.

involved, most notably Jerry Johnson, Terry Rutherford, Albert "Lucky" Williams, Heather Roberts, Laurie Howard, and Stacy Jones; the conspiracy continued virtually uninterrupted; virtually all of the overt acts took place in Lincoln and Omaha, Nebraska; and the conspiracy involved the same general activities, the sale of cocaine and crack cocaine. (*Id.*) In fact, the Government charged defendant with engaging in the conspiracy as early as November of 1994 and only sought a new indictment to tailor the overt acts in an attempt to avoid double jeopardy. Thus, the Government viewed defendant's conduct as constituting one conspiracy. Although defendant was convicted in state court only of simple possession of an illegal substance, conspiracy clearly was among those charges the state bargained away as part of the plea.

I am not unmindful of the irony of this conclusion: It may be that a criminal is insulated from further prosecution for engaging in a conspiracy, even though he or she continues to further it. Although two courts have noted this problem with the "single conspiracy" framework, those courts also found that on the facts of those cases two conspiracies existed, not one. *United States v. West*, 670 F.2d 675, 681 (7th Cir.), *cert. denied sub. nom*, 457 U.S. 1124, 102 S.Ct. 2944, 73 L.Ed.2d 1340 (1982) (applying the "totality of the circumstances" to the facts of the case and finding two conspiracies, one before a conviction and prison term, and one after); *United States v. Gross*, 1993 WL 300393 at *3 (Aug. 3, 1993) (unpublished opinion) (same). Thus, there is no direct authority for finding that even though only one conspiracy existed, the defendant may be charged twice because he continued to act in furtherance of the conspiracy after being prosecuted for his or her participation in it. When the nature of conspiracies is considered, this result appears to be correct. It is the agreement, combined with action in furtherance of the agreement, that constitutes the criminal offense. *Braverman, supra.* If there is only one agreement, the defendant can be subjected to jeopardy for entering into it only once. *Id.* A sovereign is still free to charge the defendant with other offenses if the overt acts committed after the conspiracy conviction are themselves separate violations of the law, (for example, possession

with intent to distribute); but it has not done so in this case. Therefore, as defendant has been charged twice for engaging in the same conspiracy, it is necessary to consider his argument that his second prosecution in federal court is a "sham and cover" for reprosecution by state officials.

### (b) The *Bartkus* Exception

■ "When a defendant claims that federal and state officials are not acting as dual sovereigns, he has a substantial burden of proving one sovereign is so dominated by the actions of the other that the former is not acting of its own volition." *United States v. Raymer*, 941 F.2d 1031 (10th Cir.1991) (citing *United States v. Liddy*, 542 F.2d 76, 79 (D.C.Cir.1976)). Defendant argues based on the following evidence that this prosecution is in reality a tool for a second state prosecution: (1) Special Assistant United States Attorney Richard Rothrock is also a Deputy Lancaster County Attorney; (2) the investigation of his alleged crimes was undertaken almost exclusively by state law enforcement agents; and (3) those law enforcement agents receive federal money. These facts are insufficient to make out a *Bartkus* claim.

■ First, the mere fact that Mr. Rothrock has been cross designated as a special federal prosecutor and a state prosecutor does "not even hint at" a conclusion that the two sovereigns are really acting as one. *Paiz*, 905 F.2d at 1024. *See also United States v. All Assets of G.P.S. Automotive Corp.*, 66 F.3d 483, 496 (2d Cir.1995); *United States v. Pena*, 918 F.Supp. 1431, 1437 (D.Kan.1996). *Cf. Raymer*, 941 F.2d at 1038 (fact that former state prosecutor brought charges against the same defendant as a federal prosecutor was insufficient to meet exception). Other than *United States v. Belcher*, 762 F.Supp. 666, 670 (W.D.Va.1991), in which the state prosecutor lost a case in state court then was appointed Special U.S. Assistant Attorney for the sole purpose of prosecuting the defendant for the same events, every court to consider the issue has found cross-designation of prosecutors to be permissible. Nothing was presented at the evidentiary hearing to support any other result in this case. As a Special Assistant U.S. Attorney, Mr. Rothrock prosecutes numerous

cases in federal court each year; he has done so for some time; and it is likely he will continue to do so. He clearly was not sent here to prosecute only this defendant. Further, Mr. Rocke testified that before defendant filed this motion, he never discussed the previous prosecution with Mr. Rothrock.

■ Second, even quite extensive cooperation between federal and local governments in investigating cases does not invoke the exception. *See, e.g., United States v. Moore,* 822 F.2d 35, 38 (8th Cir.1987); *Paiz,* 905 F.2d at 1024; *Talley,* 16 F.3d at 974; *United States v. Jordan,* 870 F.2d 1310, 1313 (7th Cir.), *cert. denied,* 493 U.S. 831, 110 S.Ct. 101, 107 L.Ed.2d 65 (1989) (referring to federal/state cooperation as a "welcome innovation"). It is perfectly permissible for federal authorities to prosecute cases investigated almost exclusively by state officers. *United States v. Kummer,* 15 F.3d 1455, 1460–61 (8th Cir.1994); *Moore,* 822 F.2d at 38.

■ Third, defendant argues, based on *Pena,* 918 F.Supp. at 1437, that the source of financing of this investigation is a factor properly considered in determining whether he has met the *Bartkus* exception. Even assuming that it is an appropriate factor, defendant's proof fails. While the Lincoln Lancaster County Drug Task Force, a cooperative effort between local, state, and federal narcotics officers, may receive federal funds, there is no evidence that the funds were provided to the Task Force to investigate only this defendant. I also note that defendant's argument is that state officials are using the federal government to prosecute him a second time. Thus, the fact that federal grants are used in part to assist state narcotics officers is irrelevant. The relevant inquiry would be whether state money was used to fund the federal prosecution.[3]

■ Fourth, Lincoln Police Officer Duane Bollock, head of the narcotics division, testified that he called the U.S. Attorney's Office directly and asked for federal prosecution of defendants after law enforcement officials gained significant information about defendant's alleged drug trafficking activities after a co-conspirator, Tony Rutherford, pro-

vided it. There is no evidence that Mr. Rocke or any other person at the state level was contacted about a second state prosecution of defendant. Federal prosecution, rather than state prosecution, was sought because of the large amount of crack cocaine thought to have been sold by defendant. Thus, "state officials were not using a federal prosecution to effectuate a state interest that they could not accomplish themselves." *Talley,* 16 F.3d at 974.

■ In a related argument defendant contends that "privity of contract" exists between the Lancaster County Attorney's Office and the U.S. Attorney's Office because of Mr. Rothrock's cross designation. This argument disregards authority rejecting similar contentions. In *United States v. Harrison,* 918 F.2d 469 (5th Cir.1990), a defendant argued that his federal prosecution was a "sham" because state and federal prosecutors "colluded" to prosecute him twice. As part of his argument Harrison asserted that an earlier state plea bargain prevented later prosecution in federal court. The Fifth Circuit rebuffed this argument declaring that "unless a federal agent actually participates in a state court plea bargain, subsequent prosecution in federal court does not violate the defendant's constitutional rights." *Id.* at 475 (quoting *United States v. Paul,* 853 F.2d 308, 311 (5th Cir.1988), *cert. denied,* 488 U.S. 1012, 109 S.Ct. 801, 102 L.Ed.2d 792 (1989)). Here, the plea bargain was handled exclusively by Deputy County Attorney James Rocke, with no involvement by any federal agent of any kind. Further, the transcript of the plea hearing indicates no promises were made on behalf of federal authorities. (*See* ex. 8.) Hence, the fact that the state conviction was achieved pursuant to a plea does not allow defendant to fit within the *Bartkus* exception. *Harrison,* 918 F.2d at 475.

■ Finally, defendant argues that his state conviction should be excluded as evidence at trial, arguing that it would be "fundamentally unfair" to use it against him. The Government has offered to refrain from using the evidence during its case-in-chief, but might seek to introduce the evidence as

---

**3.** To the extent defendant argues that Lancaster County is paying Mr. Rothrock's salary, it is irrelevant because, as noted above, cross-designation of prosecutors is permissible.

rebuttal evidence. *See* Federal Rules of Evidence 404(b) and 609(a)(1). As defendant was lawfully convicted of the state crime and no double jeopardy problem exists with his prosecution in federal court, I can see no reason why this evidence should not be admissible under the circumstances prescribed by the rules of evidence. For these reasons I shall recommend that defendant's motion to dismiss/motion in limine be denied.[4]

### (2) VINDICTIVE PROSECUTION

 Plaintiff moves to dismiss the indictment, claiming vindictive prosecution. (Filing 15.) A criminal defendant's due process rights may be violated where a prosecutor, motivated by vindictiveness, prosecutes a defendant on federal charges after the defendant exercised a legal right in state court. *Blackledge v. Perry*, 417 U.S. 21, 27, 94 S.Ct. 2098, 2102, 40 L.Ed.2d 628 (1974); *United States v. Beede*, 974 F.2d 948, 951 (8th Cir. 1992), *cert. denied,* 506 U.S. 1067, 113 S.Ct. 1016, 122 L.Ed.2d 163 (1993). To establish vindictiveness a defendant must "prove through objective evidence that the prosecutor's decision was intended to punish him or her for the exercise of a legal right." *Beede,* 974 F.2d at 951. Defendant argues that the prosecutor was vindictive in two ways: (a) by filing the federal case to punish him for appealing his state sentence, and (b) by dismissing the original federal indictment and then seeking a new federal indictment.

 "The court will presume an improper vindictive motive 'only in cases in which a reasonable likelihood of vindictiveness exists.'" *U.S. v. Rodgers,* 18 F.3d 1425, 1430 (8th Cir.1994) (quoting *United States v. Goodwin,* 457 U.S. 368, 373, 102 S.Ct. 2485, 2488–89, 73 L.Ed.2d 74 (1982)). Defendant cites no authority establishing a presumption under these circumstances; instead, he asserts that he is entitled to such a presumption since, in his view, Mr. Rothrock filed the federal case because the State of Nebraska could not reprosecute him. He concludes that this amounts to "forum shopping in a back door attempt to circumvent double jeopardy." (Defendant's Brief In Support Of

Motion To Dismiss For Vindictive Prosecution at 7.) Because I have already rejected this contention with regard to defendant's double-jeopardy claim, however, it cannot be used to show a "reasonable likelihood of vindictiveness exists" so as to establish a presumption of prosecutorial vindictiveness. I also note that appeals from criminal sentences are routine endeavors unlikely to raise any cognizable likelihood of vindictiveness. *See Goodwin,* 457 U.S. at 381, 102 S.Ct. at 2492–93 (noting that pretrial motions are routine and do not give rise to a presumption). Furthermore, in a recent case the Eighth Circuit has held that no presumption arises from filing a case in federal court *after* a defendant refused a plea bargain in state court. *Beede,* 974 F.2d at 952. Therefore, defendant has the burden of proving his claim through "objective evidence." *Id.* at 380–81, 102 S.Ct. at 2492.

 In his brief on this issue defendant suggests that Mr. Rothrock was actually sent to federal court for the purpose of prosecuting him. (Defendant's Brief In Support Of Motion To Dismiss For Vindictive Prosecution at 5–6.) This contention is preposterous. Mr. Rothrock has appeared and continues to appear on behalf of the U.S. Government in numerous criminal cases that have absolutely nothing to do with defendant or this conspiracy. Mr. Rothrock was here before defendant was indicted and will doubtlessly remain long after this case was been resolved. Moreover, Deputy Lancaster County Attorney James Rocke testified that before defendant filed these motions, he never discussed defendant's case or the defendant with Mr. Rothrock. In addition, although Mr. Rocke eventually became aware that defendant had appealed his sentence, he did not even handle the appeal.[5] In fact, the only evidence adduced that in any way would support a theory of prosecutorial vindictiveness was a statement by Lincoln Police Officer Greg Sims to defendant in December of 1995, when defendant had been released on bond pending his appeal. According to defendant, Sims, a nar-

---

4. Whether or not the evidence actually meets the dictates of those rules is a matter for the trial judge at or before the time of trial

5. An Assistant Nebraska Attorney General handled defendant's appeal. In this case the Nebraska Court of Appeals summarily affirmed the sentence. (*See* ex. 9.)

cotics officer, approached him outside Laurie Howard's house and told him he "would be sorry he ever got out." Assuming this statement was made, it can easily be viewed as an informing the defendant that he would be prosecuted for *continuing* to violate the law by selling cocaine and crack cocaine after he had been released, which is clearly permissible. *See Bordenkircher v. Hayes,* 434 U.S. 357, 363, 98 S.Ct. 663, 667–68, 54 L.Ed.2d 604 (1982) (a defendant may be prosecuted for violating the law, but not for exercising a legal right). In summary, defendant's evidence falls far short of proving prosecutorial vindictiveness for the filing of an appeal.

 Defendant also contends that the dismissal of the original federal indictment and bringing of a new federal indictment amounted to vindictiveness. As pretrial actions do not give rise to a presumption of vindictiveness, again defendant must prove this claim with "objective evidence." *Goodwin,* 457 U.S. at 381, 102 S.Ct. at 2492–93. He has failed to do so. Judge Kopf found in a previous order that the Government sought to dismiss the case in an attempt to avoid a dispute over double jeopardy and doing so did not give the government an improper advantage. (*United States v. Johnson,* 4:CR96–3023) (March 17, 1997). As noted by Judge Kopf, the government simply could have sought another superseding indictment to shorten the length of the conspiracy, and shortening it actually benefits the defendant because it lessens his exposure to criminal liability. I can see no way in which doing so amounted to prosecutorial vindictiveness. "A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct. . . ." *Goodwin,* 457 U.S. at 382, 102 S.Ct. at 2493. As defendant's motion for dismissal based on vindictive prosecution is groundless, I shall recommend it be denied.

### (3) MOTION TO COMPEL

Earlier in these proceedings defendant moved for a bill of particulars, asserting that the requested bill was necessary to enable him to adequately prepare for trial. For two reasons I granted the motion: First, because defendant had already been convicted in state court on similar charges, it was important to delineate the alleged criminal acts so that the court could adequately address defendant's claim of double jeopardy, and second, although defendant is charged with maintaining the alleged conspiracy until May 23, 1996, at least according to the defendant, the government had given him "no specifics regarding acts conducted in furtherance of the alleged conspiracy after October 12, 1995[.]" (Defendant's Brief in Support of Motion for a Bill of Particulars at 3.) I therefore ordered the government to supply a description of the alleged criminal acts; the dates on which they occurred; the locations where they occurred; the names of any person(s) involved or present; and the specific quantity of any drugs involved, if known.

In compliance with that order, the government filed an eleven page response detailing defendant's involvement in the conspiracy. (Filing 35.) The response provides extensive information on the nature of the charge against plaintiff, including numerous specific instances of plaintiff's actions in furtherance of the conspiracy and the other persons involved in those actions. (*Id.*) Unsatisfied with the government's response, however, defendant seeks to compel additional information. (Filing 46.) In essence, defendant objects that although the government may have complied with the order in spirit, it did not do so to the letter. For example, wherever the government's response indicates "others" besides those specifically listed may have been present during a certain transaction, defendant complains that the government did not state exactly who was present as required by the order. In addition, the response sometimes indicates that defendant repeatedly sold crack to identified and unidentified individuals during defined periods of time. Defendant demands to know the exact date of each sale during these periods, even though the government's response generally narrows them to particular locations during narrow periods of time, and even though the alleged criminal activities appear to have taken place on an almost daily basis.

 A bill of particulars is meant to inform a defendant of the nature of the charges against him or her and to prevent or minimize the element of surprise at trial.

*United States v. Miller*, 543 F.2d 1221, 1224 (8th Cir.1976), *cert. denied*, 429 U.S. 1108, 97 S.Ct. 1142, 51 L.Ed.2d 561 (1977). It is not to be used merely as a discovery tool. *United States v. Hill*, 589 F.2d 1344, 1352 (8th Cir.), *cert. denied*, 442 U.S. 919, 99 S.Ct. 2843, 61 L.Ed.2d 287 (1979). As the Eighth Circuit noted in a similar case,

> While the Government could possibly have provided even more specifics, it seems clear that the Government provided sufficient detail to satisfy the purpose of a bill of particulars, which is to fairly apprise the defendant of the charges against him so that he may adequately prepare a defense and avoid surprise at trial. *United States v. Schembari*, 484 F.2d 931 (4th Cir.1973). A bill of particulars is not to be used to provide detailed disclosure of the government's evidence in advance of trial. *United States v. Anderson*, 481 F.2d 685 (4th Cir.1973), *aff'd* on *other grounds*, 417 U.S. 211, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1974).

*United States v. Automated Medical Laboratories, Inc.*, 770 F.2d 399, 405 (4th Cir.1985).

 I agree with the Government that after receiving its response, defendant cannot argue with any sincerity that he does not know the nature of the charges against him or that he may be subject to surprise at trial. (Government's Response to Motion to Compel at 2.) The response is sufficiently detailed to give defendant an accurate understanding of the conduct that the Government alleges are overt acts in furtherance of the conspiracy. It provides numerous specific instances of acts in furtherance of the conspiracy and lists several people who were involved or witnessed those activities and lists the places where they occurred. The occasions where defendant's alleged criminal activity was so frequent as to constitute an almost daily pattern are noted as to the persons it believes were involved, the periods of time involved, and locations at which the transactions are said to have occurred. (*See generally* filing 35.) Although it may be that every single instance is not chronicled to the fullest extent, not only would such a response be exceptionally difficult to compile in this case, it would go well beyond the purpose of a bill of particulars.[6] As defendant seeks more than that to which he is entitled, *see Automated Medical Laboratories, supra*, the motion to compel will be denied.

**IT THEREFORE HEREBY IS ORDERED** that defendant's motion to compel, (filing 46), is denied.

**FURTHER, IT THEREFORE HEREBY IS RECOMMENDED** to the Honorable Richard G. Kopf, United States District Judge, pursuant to 28 *U.S.C.* § 636(b)(1)(B), that defendant's motions to dismiss/motion in limine, (filings 47 and 48), be denied.

The parties are notified that unless objection is made within ten days after being served with a copy of this recommendation, they may be held to have waived any right they may have to appeal the court's order adopting this recommendation.

June 27, 1997.

---

6. Although in the previous order I noted several cases that required specific information regarding overt acts, the acts in those cases occurred were singular in nature. *See United States v. Payden*, 613 F.Supp. 800, 819 (S.D.N.Y.) (government required to specify exact time, location, and persons present at time of alleged heroin sale by co-conspirator to undercover agent), *aff'd*, 768 F.2d 487 (2d Cir.1985); *United States v. Joseph*, 510 F.Supp. 1001, 1006 (E.D.Pa.1981) (government required to disclose the amount of money which defendant allegedly accepted as a bribe).