**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

No. 95-4125EA
No. 97-2117EA

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeals from the United States |
| | * | District Court for the Eastern |
| v. | * | District of Arkansas. |
| | * | |
| James B. McDougal, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: November 17, 1997
Filed: January 16, 1998

_____

Before FAGG, MAGILL, and HANSEN, Circuit Judges.

_____

FAGG, Circuit Judge.

James B. McDougal appeals his convictions on charges of conspiracy to defraud the United States, see 18 U.S.C. § 371 (1994); wire, bank, and mail fraud, see id. §§ 1343, 1344, 1341; aiding and abetting false statements to and entries in the books and records of federal credit institutions, see id. §§ 1006, 2; aiding and abetting false statements in loan and credit applications to influence a federal loan institution, see id. §§ 1014, 2; and aiding and abetting misapplication of small business investment company (SBIC) funds, see id. §§ 657, 2. We affirm.

This case arises from McDougal's real estate dealings and his role in Madison Guaranty Savings and Loan Association (MGSL). McDougal and his spouse, Susan, bought a controlling interest in MGSL in 1982. They soon formed Madison Financial Corporation (MFC), an MGSL subsidiary, to conduct MGSL's real estate development business. MGSL funds were used to purchase a four-hundred-acre tract of land, known as the 145th Street property, in December 1985. Large sections of the property were sold to Senator William Fulbright and other investors. Many of the purchases were financed through MGSL or Capital Management Services (CMS), an SBIC owned and operated by David Hale and licensed by the Small Business Administration (SBA), to loan money only to socially or economically disadvantaged businesses. McDougal also conducted real estate deals through entities other than MFC, and arranged for MGSL and CMS financing for them. In July 1986 McDougal suffered serious health problems and resigned as president of MFC. He had already resigned his posts as an officer and director of MGSL after an investigation by the Federal Home Loan Bank Board. The Resolution Trust Corporation closed MGSL in 1990.

In 1989, the Government charged McDougal with conspiracy to commit bank fraud in violation of 18 U.S.C. § 371 and bank fraud in violation of 18 U.S.C. § 1344. The charges primarily involved two transactions arising from development of the 145th Street property, namely, the sale of the Levi-Strauss Building to David Fitzhugh, an MGSL employee, and the sale and MGSL financing of a tract to Master Developers, a corporation owned by McDougal's brothers-in-law, Jim and David Henley. The corporation was set up at McDougal's suggestion just for the transaction. The Government asserted the sales were shams designed to alleviate MGSL's overinvestment and undercapitalization. The indictment charged McDougal with conspiring with the Henleys to obtain financing from MGSL by using fraudulent pretenses and representations, and with a scheme to defraud in obtaining funds from MGSL. McDougal was acquitted on all counts.

In August 1995, McDougal, Susan McDougal, and Jim Guy Tucker were charged in the current, multicount indictment. The indictment alleged the McDougals, Tucker, and Hale conspired to commit fraudulent transactions, including the misapplication of MGSL and CMS funds and the entry of false statements in the books and records of MGSL and CMS. According to the indictment, the defendants sought to generate fraudulent profits and engage in "land flips" in which the individual investor incurred no personal risk, while MGSL, MFC, and CMS bore all the risk instead. The indictment asserted McDougal helped obtain fraudulent loans from MGSL or CMS for corporations owned by Dean Paul, Larry Kuca, Stephen Smith, Jim Guy Tucker, and Susan McDougal. The loans financed business improvements or the purchase of land outside the 145th Street property. The indictment also alleged the McDougals and Tucker engaged in false and fraudulent loan transactions wrongfully to obtain MGSL and CMS loans for their personal benefit. Real estate other than the 145th Street property was sold to third-party nominees, and MGSL financed the fraudulent real estate transactions through false appraisals and fraudulent loan documents. Proceeds from the fraudulent sales were invested in CMS to build capital, permitting additional funding from the SBA. CMS would then loan funds to the McDougals. Before McDougal's trial, he moved to dismiss the indictment, alleging unconstitutional preindictment delay. He also sought dismissal of the conspiracy and bank fraud charges, alleging a violation of double jeopardy. The district court denied these pretrial motions and McDougal's renewed motions at the trial's end. A jury convicted McDougal of most of the charges against him.

In his appeal, McDougal first asserts the district court should have granted his motion to dismiss the 1995 indictment because preindictment delay violated the Due Process Clause. McDougal complains the indictment did not issue until more than nine and a half years after the alleged offenses. To show preindictment delay violated the Due Process Clause, a defendant must first show the delay actually and substantially prejudiced the defense. See Bennett v. Lockhart, 39 F.3d 848, 851 (8th Cir. 1994). If the defendant establishes actual, substantial prejudice, then the court balances the

reasons for the delay against the prejudice shown.  See id.; United States v. Bartlett, 794 F.2d 1285, 1289 (8th Cir. 1986).

McDougal asserts the delay prejudiced his defense because his physical condition had deteriorated between 1986 and 1995, and his physical deterioration impaired his memory.  The district court rejected this assertion after observing McDougal's testimony at trial and watching videotaped excerpts of pretrial television interviews in which McDougal discussed specific facts about his case. The district court found McDougal could refer to events with "great accuracy" and recall specific details of relevant financial transactions.  We see no error in this finding.  Even if McDougal's medical condition had impaired his memory, the mere "loss of or impairment of memories does not constitute actual prejudice for purposes of the [D]ue [P]rocess [C]lause."  Bartlett, 794 F.2d at 1290.  McDougal also asserts the delay harmed his defense because in the interim,  Senator Fulbright died and MGSL closed, leaving its files disorganized and scattered.  McDougal failed to relate the substance of the Senator's testimony to show it would have been relevant or beneficial to his case, and failed to identify any relevant documents that were lost or misplaced or the information they contained.   To show actual prejudice, a defendant must specify the witnesses or documents lost during the delay and the information they would have provided.  See Bennett, 39 F.3d at 851.  Because McDougal has not carried his burden to show the preindictment delay actually prejudiced his defense, his due process claim fails, see Barlett, 794 F.2d at 1293, and the district court properly refused to dismiss the indictment.  Given the absence of any prejudice, we need not address McDougal's contention that as preindictment delay increases, the amount of prejudice required decreases.

Second, McDougal asserts his conspiracy and bank fraud convictions violate the Double Jeopardy Clause because he was tried and acquitted of the earlier conspiracy and bank fraud charges brought in 1989.  The Double Jeopardy Clause protects against a second prosecution after acquittal for the same offense.  See United States v. Petty,

62 F.3d 265, 267 (8th Cir. 1995). To support a double jeopardy claim, a defendant must show the multiple charges reflect the same offense, both legally and factually. See id.

The Double Jeopardy Clause prohibits the government from subdividing a single criminal conspiracy into multiple violations. See id. To decide whether two charged conspiracies are really the same one, we examine the totality of the circumstances, including the time that the alleged conspiracies existed, the identity of the coconspirators, the statutory offenses charged in the indictments, the nature and scope of the activity charged, and the location of each conspiracy's events. See id. Here, the totality of the circumstances indicates two conspiracies rather than a single overall agreement. Although the time periods of the two conspiracies overlap, the conspiracy charged in the 1995 indictment both predated and continued beyond the ending date of the conspiracy charged in the 1989 indictment. The persons identified as McDougal's coconspirators are different in each conspiracy. The 1989 and 1995 indictments charge McDougal conspired to commit different substantive offenses, with one exception. Although both indictments identified one of the conspiracy's objects as making false statements in connection with a loan, the victims of the false statements were different in 1989 and 1995. As for the nature and scope of the activities charged, the 1989 conspiracy involved two one-time schemes to transfer a single parcel of property, while the 1995 conspiracy was much broader and involved different transactions and entities. The facts show different operations sharing a common player, McDougal.

Turning to the bank fraud charges, we conclude McDougal was not tried twice for the same offense. In the context of bank fraud, offenses are deemed identical for purposes of the Double Jeopardy Clause when "'the evidence required to support conviction on one of the prosecutions is sufficient to support conviction on the other prosecution.'" United States v. Thomas, 759 F.2d 659, 661-62 (8th Cir. 1985) (quoting United States v. Sinito, 723 F.2d 1250, 1256 (6th Cir. 1983)). Different

evidence is necessary to support the two bank fraud charges, which involve distinct and unrelated transactions. See United States v. Farmigoni, 934 F.2d 63, 65 (5th Cir. 1991). The 1989 and 1995 fraud schemes had different purposes, methods, perpetrators, and loan recipients. Thus, McDougal's prosecution on the 1995 bank fraud charges does not violate the Double Jeopardy Clause.

Last, McDougal seeks to adopt four arguments made by his former codefendant, Jim Guy Tucker, in Tucker's separate appeal. Federal Rule of Appellate Procedure 28(i) provides: "In cases involving more than one appellant or appellee, including cases consolidated for purposes of the appeal, any number of either may join in a single brief, and any appellant or appellee may adopt by reference any part of the brief of another." Because McDougal's appeal is not consolidated with Tucker's appeal, McDougal's case does not involve more than one appellant, and he cannot adopt Tucker's arguments under Rule 28(i). See United States v. Carpenter, 95 F.3d 773, 774 n.1 (9th Cir. 1996), cert. denied, 117 S. Ct. 1094 (1997). Further, Tucker's arguments are fact specific and cannot be transferred by adoption from Tucker's case to McDougal's case without an explanation of how McDougal was prejudiced. See United States v. Elder, 90 F.3d 1110, 1118 (6th Cir.), cert. denied, 117 S. Ct. 529 (1996), and cert. denied, 117 S. Ct. 993 (1997); see also United States v. Darden, 70 F.3d 1507, 1526 n.5 (8th Cir. 1995), cert. denied, 116 S. Ct. 1449, and cert. denied, 116 S. Ct. 2567 (1996). Thus, McDougal's bare motion to adopt Tucker's arguments is insufficient to raise the arguments in McDougal's case. See Elder, 90 F.3d at 1118. Because McDougal has not shown he was individually prejudiced by the claimed errors that he proposes to adopt, McDougal has waived those claims of error. See Darden, 70 F.3d at 1526 n.5; United States v. Lucht, 18 F.3d 541, 553 n.3 (8th Cir. 1994).

We thus affirm McDougal's convictions.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.